[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 210 
The prisoner, a convict in the State prison at Auburn, was indicted, tried and convicted of murder in the first degree, for killing Elihu Moore, another convict, by stabbing him with a sharp knife. As no opinion was delivered in the Supreme Court, we are deprived of the benefit of the views of that court upon the questions presented, except as may be inferred from an affirmance of the judgment and conviction. The points presented in this court will be briefly noticed: 1. That there was no evidence ofpremeditated design to kill. This point is not tenable. The evidence given upon the trial was conflicting as to the principal point litigated, whether the deceased had a knife in his hand with which he attempted first to stab the prisoner. It was for the jury to determine whether the version given by the witnesses for the prosecution or that given by the witnesses for the defence was correct. If the former, as we must assume for the purposes of this question, the jury were *Page 211 
justified in finding the requisite premeditation under the construction of the statute which has been uniformly adopted by the courts since the case of People v. Enoch (13 Wend., 159), that it is sufficient if the design to effect death be formed at the instant of striking the fatal blow. (3 Seld., 385;37 N.Y., 418.) The act chapter 644 of the Laws of 1873 changed the definition of murder, both in the first and second degrees, but the homicide in question took place a few days prior to the passage of the act and was not affected by it. (Sec. 3.)
2. This court has no power to reverse the judgment upon the ground that the verdict was against the weight of evidence. A writ of error in a criminal case brings up for review only questions of law raised by exceptions properly taken upon the trial. (2 R.S., 740; 41 N.Y., 1.)
3. It is objected that the convict Haley was not a competent witness to prove the letter alleged to have been written by the prisoner, or to conversations with the prisoner subsequent to the commission of the offence. The statute authorizing convicts to be sworn, is as follows: "Such convict may be examined on such trial and shall be considered a competent witness against any fellow-prisoner, for any offence actually committed whilst in prison, and whilst the witness so offered shall have been confined in the prison in which such offence shall have been committed." This statute is amply broad enough to permit convicts to testify to any facts material to the issue upon the trial of any such offence, and is not restricted to the particular acts constituting the crime. No reason for such restriction is perceived, and the language will not justify it.
4. It is claimed that the court erred in sustaining the objection to the offer to show, by the prisoner, that he had held no communication in any way with any one in the collar shop where he worked, and where the homicide was committed, from the day of its occurrence. This presents the most serious question in the case. The prosecution had introduced a letter in evidence, alleged to have *Page 212 
been written by the prisoner to a fellow-convict, but which was never delivered, the same having been intercepted and retained by the agent of the prison, which, if genuine, tended to show an attempt on the part of the prisoner to suborn witnesses to testify upon the trial in his behalf. The keeper Thomas was then called by the prosecution, and testified to a conversation with the prisoner, in which the latter requested to be removed to another part of the prison, which was refused by the keeper, on the ground that they wished to prevent any communication between him and the other convicts, and the prisoner said, "he had done all the communicating he wanted to." This witness also gave evidence from which it might be inferred that other communications than by writing between the prisoner and other convicts were possible. The prisoner's counsel questioned the witness directly on this point: "Do you want to give the jury the idea that there was any opportunity of his communicating with persons outside?" A. "It is possible he may have communicated, but it was our intention to prevent it." Q. "Were there any of the convicts at work in the collar shop who had any occasion to go to the south-west corner of that wing?" A. "Not regularly; they could have got there." The admission was not confined to the letter produced, nor to written communications, but might be claimed to embrace verbal communications. The evidence of Thomas showed verbal intercourse practicable, and the letter tended to show that the object of the prisoner was to manufacture testimony. About an equal number of convicts were sworn on each side, those for the prosecution giving evidence which, if true, as we have seen, justified the verdict; those for the prisoner giving evidence which, if true, tended to establish the defence of justifiable homicide, or at least an offence considerably below murder in the first degree. All these witnesses were tainted with crime. They were made competent by statute from the necessity of the case. The jury were permitted to hear and consider their evidence and give it such weight as they thought it deserved, but would naturally *Page 213 
and properly scrutinize it with care, and with a degree of suspicion not exercised toward ordinary witnesses. The prisoner clearly had a right to answer the evidence tending to prove that he had tampered with these witnesses, and induced them to testify falsely in his favor. He had this right in the first place to relieve himself from the imputation of suborning his witnesses (2 Phill. on Evidence, 972), and in the next place, to repel, if he could, the imputation attempted to be cast upon them, that they had been suborned. The intercepted letter could not have been effective. He was permitted to testify as to writing letters, but was refused the offer to testify that he had no other communication, thus leaving the jury to infer that such other communications had taken place, and for the improper purpose of manipulating evidence. I am unable to conceive a reason to justify this refusal. If the prisoner had satisfied the jury that no communication had in fact taken place, it would have relieved him and the witnesses called by him from the criminal imputation which the evidence, on the part of the prosecution, was calculated if not designed to establish, and would have tended to strengthen their credibility. The evidence offered was of the same character, and competent upon the same ground as the evidence received as to writing letters. It should have been received. We have no legal means of determining what effect the evidence would have had if received. It was material and competent, and it was therefore error to reject it. It was suggested upon the argument, that this exception was obviated by the fact that the question when first put was the answered. The record shows that the question was put, and the answer "No, sir," given, and immediately after an objection was interposed and sustained. The counsel for the defence then made the distinct offer before stated, which was objected to, the objection sustained and an exception taken. This exception was not obviated by the answer to the first question. The decision of the court at that time sustaining the objection, and the distinct ruling rejecting the offer was specific that the evidence was incompetent, and the jury *Page 214 
must have so understood it. Besides, the defence was not restricted to a simple negative, but had a right to prove, in addition, any facts pertinent to the question. The prisoner was legally entitled to the evidence offered, and there is no alternative but to grant a new trial.
The judgment should be reversed and new trial ordered.
All concur.
Judgment reversed.