## SNELL and another vs. BRAY.

*November 4 — November 21, 1882.*

CONTRACTS. *(1) Release from promise to marry, as consideration.*
EVIDENCE. *(2) When husband competent witness for wife. (3) Having bank account not evidence of wealth. (4) Letters as admissions by conduct. (5) Entire letter to be read to jury. (6) Immaterial error.*

1. A release from a contract to marry is a good consideration for a promise by the party accepting such release to pay money therefor.
2. The rule of *Hackett v. Bonnell*, 16 Wis., 471, that if husband and wife join in an action affecting only the wife's separate property, the husband is a competent witness for his wife, adhered to. The words "in every such case," in sec. 4068, R. S. (which provides

that "no person shall be disqualified as a witness in any action or proceeding, civil or criminal, by reason of his interest in the event of the same, as a party or otherwise, and every party shall be in every such case a competent witness," etc.), mean not merely every case in which the party is a *party in interest,* but every "action or proceeding, civil or criminal."

3. In an action upon a written agreement to pay money in consideration of the release of a promise to marry, it was not error to permit the cashier of a bank who had described the defendant's handwriting and method of signing his name, to testify that the defendant had for fifteen years been a depositor in such bank, for the purpose of showing the means the witness had of becoming acquainted with the defendant's signature. Such evidence does not tend to show that the defendant is a man of wealth.

4. Letters written by, or at the instigation of, a party to an action, to third persons, warning them not to aid the other party or testify in the action, or urging them to testify to a particular state of facts, are in the nature of admissions by conduct and are admissible in evidence. It is immaterial that such letters were written before the action was commenced, if the cause of action had been asserted and a controversy concerning it was then in progress.

5. A letter, with the exception of a single sentence therein, having been offered in evidence by one party, as having (except such sentence) been written and signed by the other party, and there being a conflict in the evidence as to the handwriting of the sentence not offered, and no testimony to show that any addition was made to the letter after it was received by the person to whom it was addressed, it is *held,* that there was no error in requiring the whole letter to be read to the jury.

6. Five of nine letters offered in evidence having been received and four rejected, and there being no fact in the case which the rejected letters would have tended to prove, which was not more abundantly proved by those received, it is *held* that the rejection of the four letters, if error, was immaterial.

APPEAL from the Circuit Court for *St. Croix* County.

It is alleged in the first count of the complaint that on February 10, 1875, there existed, and had for a long time theretofore existed, a contract of marriage between the defendant and the plaintiff *Bertha* (then *Bertha Hunter*), and that in consideration that she released him from said contract

and the obligations thereof the defendant, on the day aforesaid, made and delivered to her a promise or agreement in writing whereby he promised to pay her $3,000 for such release as soon as she should be married. It is further alleged that on the 19th of January, 1876, she intermarried with the plaintiff *Marcellus Snell*, and immediately notified the defendant of her said marriage, and requested him to pay her the $3,000, which he refused to do, and has not paid the same or any part of it. The complaint contains a second count in all respects like the first, except it is not stated therein that the agreement was in writing. Judgment is demanded for $3,000, with interest thereon from January 19, 1876, and for costs. The answer denies generally all of the allegations of the complaint, except it admits the marriage of the plaintiffs, as stated in the complaint. The action was commenced in 1880. It was tried in November, 1881, and resulted in a verdict for the plaintiffs for $4,064, being the full amount of the claim. A motion for a new trial, on the ground that the verdict was contrary to the evidence, was made by the defendant and denied by the court, and judgment was entered pursuant to the verdict. The case is further stated in the opinion. The defendant has appealed from the judgment.

*C. D. Cleveland,* for the appellant.

For the respondents there was a brief signed by *B. E. Van Keuren,* as attorney, and *C. E. Pike,* of counsel, and the cause was argued orally by *Mr. Pike.*

LYON, J. The alleged errors assigned as grounds for a reversal of the judgment herein will be considered in their order.

1. At the commencement of the trial counsel for defendant objected to the admission of any evidence under the complaint, for the reason that it fails to state a cause of action. The point of the objection is that a release of the

defendant by *Bertha* from the marriage contract is not a good consideration for his promise to pay her a sum of money. Certainly the release of one party to a valid contract by the other party thereto is, ordinarily, a sufficient consideration for a promise by the party released to pay such other a sum of money, or to do any other lawful act. Such a transaction amounts to a substitution of one contract for another, the consideration of the original contract being the consideration for the substituted contract. *Brown v. Everhard*, 52 Wis., 205.

As was said by Lord DENMAN, in *Stead v. Dawbar*, 10 Ad. & El., 57: "The same consideration which existed for the old agreement is imported into the new agreement which is substituted for it." We are not aware of any rule of law which takes a contract of marriage out of this general rule. A party to a marriage contract may recover damages of the other party for a breach of it. This shows that the contract has a money value, and it necessarily results that a release of such a contract is a good consideration for a promise, by the party released, to pay money for the release.

2. To entitle the plaintiffs to recover, they were required to satisfy the jury by evidence that a marriage contract existed between *Bertha* and the defendant, and that she released him from the obligation thereof in consideration of a promise made by him to pay her $3,000 when she should be married. The court so instructed the jury, and instructed further that there could be no recovery unless the promise of defendant to pay the money was in writing. No statement of the evidence bearing upon these propositions will be attempted here. It is voluminous and very conflicting. It must suffice to say that we find testimony in the record tending to prove that a marriage contract existed between the defendant and *Bertha;* that in February, 1875, he offered her $3,000 to release him therefrom; that she accepted the offer; and that

he thereupon wrote, signed, and delivered to her an instrument in writing substantially in the words following:

"I, *J. M. Bray*, promise to·pay to *Bertha Hunter* $3,000 for the release of promising to marry her, as soon as she is married.                                   J. M. BRAY."

The testimony also tends to show that during the same year the writing was burned in a conflagration which consumed the building in which *Bertha* resided. The court admitted parol proof of the writing. There was, therefore, sufficient testimony to support a special verdict finding the existence of the marriage contract, the release of the defendant from the same by *Bertha*, and the execution to her of the alleged written agreement, in and by which he promised and agreed to pay her $3,000 for such release as soon as she should be married. In other words, there is sufficient testimony to support the verdict for the plaintiffs, and the refusal of the circuit court to grant a new trial on the ground that the verdict was against the evidence is not cause of reversal.

3. On the trial, the deposition of the plaintiff *Marcellus Snell* was read in evidence on behalf of the plaintiffs, against the objection of defendant's counsel. His testimony relates to material and controverted facts in the case. The argument against the admission of the deposition is that the deponent is not a party in interest, but only a nominal party to the action; and that the statute requires that he should be a party in interest in order to make him a competent witness for his wife.

Under the provisions of the general law of 1858, ch. 134, (R. S. 1858, p. 817), this court held, in *Hackett v. Bonnell*, 16 Wis., 471, that, if husband and wife join in an action affecting only the wife's separate property, the husband, being a proper party to the action (although not a necessary party and perhaps not a party in interest), is a competent witness for his wife. The circuit court in that case sustained an ob-

jection to the competency of the husband as a witness, and that ruling is one of the grounds upon which the judgment of that court was reversed. It is true, as suggested by counsel, that in the case cited in the opinion to sustain the rule (*Barnes v. Martin*, 15 Wis., 240), the husband was a party in interest; but the fact remains that the rule as above stated received the sanction of the court, and has not since been disturbed. The case is, in principle, precisely like this case. Each relates exclusively to separate property of the wife. The language of the corresponding provisions in the present revised statutes (sec. 4068) differs somewhat from the former statute, which was construed in *Hackett v. Bonnell*, but we think there was no intention to change the law, and that it is not changed by the revision. Sec. 4068 is as follows: "No person shall be disqualified as a witness in any action or proceeding, civil or criminal, by reason of his interest in the event of the same, as a party or otherwise; and every party shall be in every such case a competent witness, except as otherwise provided in this chapter. But such interest or connection may be shown to affect the credibility of the witness." Counsel rely upon the words "in every such case," and claims that they mean "in every case in which the party is a party in interest,"— leaving intact (if the husband or wife be only a nominal party) the common law rule that they are not competent witnesses for or against each other. We cannot adopt this construction. We think the words above quoted simply mean "every such action or proceeding, civil or criminal," previously mentioned in the section. We must, therefore, adhere to the rule of *Hackett v. Bonnell*, and hold that the plaintiff husband was a competent witness in the action.

4. A witness was called by the plaintiff to prove that the defendant usually signed his name "*J. M. Bray.*" He also described the defendant's handwriting. The witness was the cashier of a bank, and was permitted to testify that defendant

Snell and another vs. Bray.

was a depositor in such bank and had been for fifteen years. The admission of testimony that he was such depositor is assigned as error. The testimony was properly received for the purpose of showing the means witness had of becoming acquainted with defendant's signature. It was not shown how large his deposits or balances were, but only the mere circumstance that he had kept a bank account for fifteen years. This does not tend to show that the defendant is a man of wealth, as claimed by counsel for the defendant. The members of this court can testify truthfully from actual experience that the keeping of a bank account for many years is a luxury in which even the poor sometimes indulge. Besides, the defendant, when on the stand as a witness, was interrogated in respect to his wealth. Such testimony was rejected by the court on objection of his counsel. But the objection was at once withdrawn, and by consent he was examined and answered fully in respect to his pecuniary condition when the contract in suit is alleged to have been made. After such testimony had been admitted by consent, it would be difficult to say that the testimony of the cashier is material, even though technically inadmissible.

5. The plaintiffs offered in evidence the following letter, which was probably written in 1877:

"OSHKOSH, September 23.

"ELIZA ROGERS: We have heard that you allowed yourself, or are about to allow yourself, to be connected with certain women here in an attempt by them to Blackmail *Mr. Matt. Bray*. We hope this is not so, and that you have not and will not have anything to do with them. They are ruining themselves by their courses, and are sure to get into trouble, and you cannot help injuring your credit by taking part with them. We write this on account of the family name of Rogers, as well as on your own account. We warn you for old association's sake. That you may keep out of such a scrape is the wish of your     SINCERE FRIENDS."

The defendant testified that he had never seen this letter before the trial, but that he requested a friend to write to Mrs. Rogers, and he thought this letter was in the handwriting of such friend and was written pursuant to his request. He does not say what he told his friend to write to Mrs. Rogers, or that this letter contains anything which he did not authorize his friend to insert in it. The court admitted the letter, and the ruling is alleged as error. We think the testimony sufficient to connect the defendant with the letter, and make him responsible for it. It was therefore admissible, if it would have been had the plaintiff himself written it. It was written and sent to Mrs. Rogers long before this action was commenced, but after the controversy had arisen in respect to the claim in suit. In substance and effect Mrs. Rogers is counseled and warned, at the peril of injury to her credit and good name, not to aid *Bertha* in her attempt to compel the defendant to pay the claim in suit. It is a direct appeal to Mrs. Rogers to remain silent while the controversy should last, although she might be cognizant of facts material to the claimant. Had the letter been written *pendente lite*, there could be no doubt of its admissibility. It is in the nature of an admission by conduct, and tends to show that the defendant lacked an honest defense to the claim, just precisely as a letter (hereinafter noticed) written by *Bertha* to Mrs. Rogers two months later, was received in evidence as tending to show by her conduct that she thought she had a bad cause. It will be seen, when we come to consider the letter last mentioned, that *Bertha* requested and urged Mrs. Rogers to say or testify to the language of the defendant's alleged writing upon which this action is based. *Bertha* counseled Mrs. Rogers to testify to a particular state of facts, while the defendant counseled her not to testify at all. It is quite immaterial that these letters were written before the action was commenced. The cause of action had then been asserted, and a controversy was in progress concerning it, and

it is perfectly obvious that both letters were written in reference to probable future litigation.

On the general subject of the admissibility of such evidence we cannot do better than quote from what was said by COCKBURN, C. J., in *Moriarty v. L. C. & D. Railway Co.*, 5 L. R., Q. B., 314: " The conduct of a party to a cause may be of the highest importance in determining whether the cause of action in which he is plaintiff, or the ground of defense, if he is defendant, is honest and just; just as it is evidence against a prisoner that he has said one thing at one time and another at another, as showing that the recourse to falsehood leads fairly to an inference of guilt. Anything from which such an inference can be drawn is cogent and important evidence with a view to the issue. So, if you can show that a plaintiff has been suborning false testimony, and has endeavored to have recourse to perjury, it is strong evidence that he knew perfectly well his cause was an unrighteous one. I do not say that it is conclusive. I fully agree that it should be put to the jury with the intimation that it does not always follow, because a man, not sure he shall be able to succeed by righteous means, has recourse to means of a different character, that that which he desires, namely, the gaining of the victory, is not his due, or that he has not good ground for believing that justice entitles him to it. It does not necessarily follow that he has not a good cause of action, any more than a prisoner's making a false statement to increase his appearance of innocence is necessarily a proof of his guilt; but it is always evidence which ought to be submitted to the consideration of the tribunal which has to judge of the facts." Page 319. See, also, 1 Greenl. on Evi., § 196.

We conclude that the letter signed " Sincere Friends " was properly received in evidence.

6. The next question to be considered arises upon the letter above mentioned, from the plaintiff *Bertha* to Mrs. Rog-

Snell and another vs. Bray.

ers, dated November 24, 1877. The purpose for which the defendant introduced this letter has already been stated. It seems that Mrs. Rogers was then in California. It is only necessary to set out the closing sentences of the letter, which are as follows:

"I write you these few lines in hast to let you now that things ar red hot — be shur and let me now where you go so I can fiend you when you are wanted and be shuer and say these wirds I *J. M. Bray* promes to pay to bertha Hunter 3000 thousand Dol for the relese of promising to marry her as soon as married *J M Bray* you stick to that. This was exactly the form of the note I saw. Mark sends you his love in hast write soon

your ever true friend

Bert Snell"

The testimony tended to show that the above words, "This was exactly the form of the note I saw," were not written by *Bertha*, and it was claimed that they were written by Mrs. Rogers. The letter, except the sentence above quoted, was offered in evidence on behalf of the defendant. Counsel for plaintiffs demanded that this sentence also should be read, and the court so ruled. Upon this ruling error is assigned. It is said that the reading of this sentence made a statement by Mrs. Rogers, not otherwise verified by her (for she was not produced as a witness), testimony in the case, and that the jury may have predicated their verdict on such unauthorized testimony. If it be conceded that the sentence was written by Mrs. Rogers, there is a great force in the position of counsel. But it is not very satisfactorily proved that she wrote it. The letter being produced by the defendant as having been written and signed by *Bertha*, in the absence of any other testimony and aside from the intrinsic evidence furnished by the letter itself, the presumption undoubtedly is that she wrote the whole of it. She refused to admit, when examined as a witness on the subject,

that the letter was her handwriting, but said it looked like hers; and, further, that the sentence in question did not look like her handwriting, but would not testify that it was not. She also testified that she was acquainted with the handwriting of Mrs. Rogers, and that the sentence did not look like her writing. The defendant testified that the letter was in *Bertha's* handwriting except that sentence. We find no further testimony given by witnesses on the stand on the subject.

Looking into the original letter, which is returned as part of the record, we find it is not separated into paragraphs, but is written continuously, from beginning to end, as one paragraph. It covers two and one half pages of ordinary ruled note paper, and contains no blank spaces or interlineation. The spaces between the written lines are uniform throughout The words " you stick to that " are on one line, commencing close to the left margin. Then follows the sentence in question. The first two words, "This was," are written on the same line, and the remainder of the sentence occupies the whole of the next ruled line. Then follows on the next ruled line the words " Mark sends you his love," etc., commencing at the left margin. The sentence in question was written with ink apparently a little lighter than that used in the balance of the letter, and the handwriting of that sentence appears to us, who are not experts, quite similar to that in the rest of the letter. If there is any difference the penmanship of the sentence is the best. The idea expressed, however, would indicate that it came from some person other than *Bertha*, whoever wrote it. Omit the concluding words, " I saw," or for the latter word read " had," and there would be nothing in the sentence to indicate that it was written by another.

The testimony and reasonable probabilities on the subject are so uncertain and conflicting that had the circuit judge held that it appeared *prima facie* that *Bertha* wrote the whole

letter, we should hesitate to say that he erred. The record does not inform us of the grounds upon which the court ruled that the whole letter must be read to the jury. He may have so ruled on the ground above suggested. Probably, however, the ruling went upon the ground that there was no evidence tending to show that any addition was made to the letter after it was received by Mrs. Rogers. If *Bertha* sent it to her in its present form, the whole of it is her letter, no matter who wrote the sentence in question. If written by another, she adopted it as her own; and, under a familiar rule, if any of the letter was put in evidence against her, she was entitled to have it all read to the jury. The facts that the words "Mark sends you his love," etc., follow the disputed sentence in regular order, and that these words were confessedly written by *Bertha*, raise a strong presumption that the sentence in dispute, if written by another, was written under her own eye and adopted by her as a part of her communication to Mrs. Rogers. So, upon any theory of the case justified by the testimony, we think it was not error to require the whole letter to be read to the jury.

7. The defendant offered in evidence nine letters or notes purporting to have been written to him by the plaintiff *Bertha*, which he received through the post office. They were proved to be in her handwriting. Five of them were received, and four were rejected. Those rejected were short notes written on postal cards. There is nothing in them but threats, invective, and epithets, and demands for an interview with the defendant. They were probably competent evidence in the case. But the five letters which were admitted covered the whole ground. In these the threats were more violent, the invective more severe, and the epithets coarser and more brutal than in the postal cards. Besides, the admitted letters were profane and grossly indecent in expression. In some of them she demanded money, in smaller or larger sums, but did not once demand $3,000. There is not

a fact in the case, which the rejected notes would have tended to prove, that is not more abundantly proved by those received. That she denounced and threatened him; that she heaped foul and disgusting abuse upon him; and that she did not in her letters claim $3,000, or make the slightest allusion to any agreement by him to pay her that sum,— are verities in the case. In these respects the case could not have been made stronger for the defendant. The rejection of the postal card notes is of no importance whatever, for it is impossible that they could have added anything to the proof, which, on these points, was conclusive for the defendant without them.

Finding no material error disclosed by the record, we must affirm the judgment of the circuit court.

*By the Court.*— Judgment affirmed.