Joseph Nowack, an Infant, by Barnett Nowack, his Guardian ad Litem, Appellant, *v.* Metropolitan Street Railway Company, Respondent.

166   433
170   1446
170   1447
166   433
h 78 AD²416

1. Evidence.— Attempt by Party to an Action to Suborn a Witness. Evidence tending to show that a party to an action tried to bribe a witness to give false testimony in his favor, although collateral to the issues, is competent as an admission by acts and conduct that his case is weak and his evidence dishonest; it is not conclusive, but is for the consideration of the jury, after ample opportunity for explanation and denial, under proper instructions to prevent them from giving undue attention to the collateral matter to the detriment of the main issue.

2. Competency of Proof as against a Corporation of an Attempt to Suborn a Witness by its Agent. An investigator employed by a corporation " to see to the witnesses and take statements and to interview witnesses," those who " expect and those who are witness.s," upon the trial of actions against it, without limitation as to the means to be employed, is the agent of the corporation in whatever he does which directly relates to and promotes that part of the corporate business, and his acts within

the scope of his employment, even if unlawful, are corporate acts; if in order to promote its interest he sees fit to use the power intrusted to him by an attempt to bribe a witness to testify falsely in its favor, he must be deemed to have acted in the course of his employment, and his act is that of the corporation, against which evidence thereof is admissible without proof of some corporate act expressly authorizing him to tamper with the witness.

*Nowack* v. *Met. St. Ry. Co.*, 54 App. Div. 302, reversed.

(Argued March 6, 1901 ; decided April 16, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 20, 1900, affirming a judgment in favor of defendant entered upon a verdict and an order denying a motion for a new trial.

This action was brought to recover damages alleged to have been sustained by the plaintiff, when a lad of twelve years, through the negligence of the defendant in running over him with one of its horse cars and inflicting injuries which resulted in the loss of his right leg.

Upon the trial the theory of the plaintiff was that he started to cross East Houston street, in the city of New York, when a horse car of the defendant was approaching from the west about 75 feet away. He had about 16 feet to go in order to get entirely across the track. Going southerly in a diagonal direction, in order to reach a point farther east on the opposite side of the street, where he was called by an errand, his back was partly toward the approaching car. He thought he had time to cross in safety, but after crossing the north rail he was knocked down by one of the horses on the south side of the track and run over by the car. The horses were galloping at full speed under the whip of the driver, and after running over the plaintiff the car went nearly three blocks before it stopped.

The theory of the defendant was that the plaintiff was not in front of the horses at any time and was not crossing the street, but was trying to catch on to the car near the middle, and that, after several efforts, he fell under the car, the rear wheels of which passed over him. The conflict in the evi-

dence was irreconcilable, for several witnesses were called to sustain the theory of either party. Among them, on the part of the plaintiff, one Klein was sworn, who testified that he was standing on the front platform with the driver, who was whipping his horses, which were ·running at full speed. He first saw the plaintiff when he was from 12 to 15 feet in front of the horses between the two rails and about to cross the south rail. He told the driver to look out for the boy, but the reply was in substance " mind your own business." On the cross-examination he was asked if before the former trial of the action he tried to induce a woman to swear that she saw him on the front platform and that she refused, but he denied it.  ·

On the redirect examination he testified that he knew one Kaufmann, who had been to his house five or six times during the week then past, the first time being on Saturday, a week before. He was asked to state what Kaufmann said to him on that day, but it was excluded. The witness was then withdrawn, and Kaufmann, being put upon the stand by the plaintiff, testified that he was employed by the defendant as an investigator; that his duties were " to see to the witnesses and take statements and to interview witnesses," those who " expect and those who are " witnesses, and that he had been acting in this case for the defendant. The plaintiff thereupon resumed the examination of Mr. Klein and asked him to state the conversation that he had with Kaufmann on the Saturday in question, but the defendant's objection as incompetent, immaterial and irrelevant was sustained, and the plaintiff excepted. After the witness had testified that he had a conversation with Kaufmann on the occasion mentioned in reference to the testimony that he was to give upon the trial, he was asked these questions : " What conversation did he have with you in reference to the testimony you were to give upon the trial of this action ? Did Harry Kaufmann make any offer to you of money or any other thing in reference to the testimony you were to give upon the trial of this action ? " Each of these questions was objected to upon the ground

above stated, the objections were sustained and the plaintiff excepted separately to each ruling.

The jury found for the defendant, and after affirmance by the Appellate Division, one of the learned justices dissenting, the plaintiff came here.

*Harold Nathan* and *Frederic E. Perham* for appellant. The court erred in excluding evidence of attempts on the part of defendant to suborn plaintiff's witness. (*Moriarty* v. *L. etc., Ry. Co.*, L. R. [5 Q. B.] 314; *Cruikshank* v. *Gordon*, 118 N. Y. 178; 48 Hun, 308; *Gulerette* v. *McKinley*, 27 Hun, 320; *Adams* v. *People*, 9 Hun, 89; *Donohue* v. *People*, 56 N. Y. 208; *Mather* v. *Parsons*, 32 Hun, 338; *C. C. Ry. Co.* v. *McMahon*, 103 Ill. 485; *Hastings* v. *Stetson*, 130 Mass. 76; *State* v. *Nocton*, 121 Mo. 537; *Heslop* v. *Heslop*, 82 Penn. St. 537.) The act of the defendant's investigator, in attempting to suborn a witness, being an act done in the course of his employment, was an act of the defendant company itself, and was equivalent to an admission, not by the agent, but by the company. (*F. A. Bank* v. *F. S. S. & G. S. F. R. R. Co.*, 137 N. Y. 231; *Jarvis* v. *M. B. Co.*, 148 N. Y. 652; *Clark* v. *Koehler*, 46 Hun, 536; Story on Agency [9th ed.], § 452; 4 Thompson on Corp. § 4912; *T. B. Co.* v. *Betsworth*, 30 Conn. 380.)

*Charles F. Brown* and *Henry A. Robinson* for respondent. Evidence of an offer by Kaufmann is not binding upon the defendant. (*Moriarty* v. *L., etc., Ry. Co.* [5 Q. B.] 314; *Marvin* v. *Wilber*, 52 N. Y. 270; Morawetz on Corp. [2d ed.] 509, § 540a; Cook on Corp. §§ 716, 717, 718, 719; *Titus* v. *Railway*, 37 N. J. L. 98; *Matter of U. Nat. Brewing Co.*, 154 N. Y. 268; *F. Nat. Bank* v. *O. Nat. Bank*, 60 N. Y. 278; *Carver Co.* v. *Manufacturers' Company*, 72 Mass. 214; *Trip* v. *M. P. Co.*, 137 Mass. 499; *Keel* v. *Brillinger*, 84 Penn. St. 279; *K. N. Mfg. Co.* v. *McAllister*, 36 Mich. 327.) The rulings upon evidence with reference to conversations with Kaufmann were correct. (*Kay* v. *Met. St. Ry. Co.*, 163 N. Y. 447.)

Vann, J.   Evidence tending to show that a party to an action tried to bribe a witness to give false testimony in his favor, although collateral to the issues, is competent as an admission by acts and conduct that his case is weak and his evidence dishonest.   It is somewhat like an attempt by a prisoner to escape before trial, or to prove a false *alibi*, or by a merchant to make way with his books of account, except that it goes farther than some of these instances, for in addition to reflecting on the case, it reflects upon the evidence on that side of the controversy.   " Where it appears that on one side there has been forgery or fraud in some material parts of the evidence, and they are discovered to be the contrivance of a party to the proceeding, it affords a presumption against the whole of the evidence on that side of the question, and has the effect of gaining a more ready admission to the evidence of the other party."   (1 Phillips on Ev. [C. & H. Notes] 627.)   It is not conclusive, even when believed by the jury, because a party may think he has a bad case when in fact he has a good one, but it tends to discredit his witnesses and to cast doubt upon his position.   It is for the consideration of the jury, after ample opportunity for explanation and denial, under proper instructions to prevent them from giving undue attention to the collateral matter to the detriment of the main issue.

The leading authority in support of such evidence is an English case, decided after careful argument by counsel and upon full discussion by the judges.   (*Moriarty* v. *London, C. & D. Ry. Co.*, L. R. [5 Q. B.] 314.)   It is also sustained by the cases in this state relating to the subject, some with and some without discussion.   (*Cruikshank* v. *Gordon*, 118 N. Y. 178, 187; *Gray* v. *Met. St. Ry. Co.*, 165 N. Y. 457, 459; *Mather* v. *Parsons*, 32 Hun, 338 ; *Gulerette* v. *McKinley*, 27 Hun, 320; *Adams* v. *People*, 9 Hun, 89.)   It is received even in criminal actions.   (*People* v. *Rathbun*, 21 Wend. 509 ; *Gardiner* v. *People*, 6 Parker Cr. Rep. 155, 205 ; *Donohue* v. *People*, 56 N. Y. 208.)   The same rule prevails in other states, without exception, so far as we have been able to discover.   (*Egan* v. *Bowker*, 5 Allen, 449 ; *State* v. *Nocton*, 121

Mo. 537, 551; *Heslop* v. *Heslop*, 82 Pa. St. 537, 539; *Snell* v. *Bray*, 56 Wis. 156, 162; *Lyons* v. *Lawrence*, 12 Ill. App. 531; *People* v. *Marion*, 29 Mich. 31; *Commonwealth* v. *Webster*, 5 Cush. 295, 316.) The elementary writers sanction it, some notwithstanding they concede it to be collateral and others upon the ground that as it relates to good faith or the intent of a party, it is a material fact and has a direct bearing on the issue. (1 Taylor on Ev. [9th ed.] 242; 1 Greenleaf's Ev. [15th ed.] § 196; Wheaton on Ev. § 1265; 1 Starkie's Ev. 437; 11 Amer. & Eng. Ency. of Law [2nd ed.] 503.)

It is claimed, however, that such evidence is not admissible against a corporation without proof of some corporate act expressly authorizing an agent to tamper with witnesses. This is equivalent to claiming that such evidence cannot be received against corporations at all, because in the nature of things proof of express authority would be impossible. A corporation can act only through agents, and where a branch of its business, whether broad or narrow, is intrusted to an agent, without any restriction, whatever he does which directly relates to that part of the corporate business and tends to promote it, is binding upon the corporation. Under such circumstances he has control of the method of action, and that which he does, whether morally right or wrong, within the general scope of the matter intrusted to him, in legal effect is done by the corporation itself. Having authority to accomplish a certain result, with no limitation as to the means to be employed, his acts, so far as they directly contribute to that result, even if unlawful, are corporate acts. They are done for the corporation by an agent clothed with general authority to effect a certain purpose, which they aid in attaining. Any admission made by him through acts done to carry on his branch of the business, and which reasonably tend to advance it, is regarded in law as made by the corporate body which authorized him to act for it with reference to the subject of his employment.

Kaufmann was employed to look up and "see to" witnesses for the defendant, so as to enable it to defeat the plaintiff's

claim, among others.  He was to find witnesses, if possible,
who would swear to such a state of facts as would prevent a
recovery against the defendant.  The method of doing this
was left to his judgment and discretion.  If he adopted a
method not contemplated by the defendant, still it is respon-
sible for what he did in the line of his employment to pro-
mote its interest.  In order to promote its interest he saw fit,
as we must now assume, to use the power intrusted to him by
trying to bribe the most important witness for the plaintiff to
testify falsely in favor of the defendant.  He was employed
" to see to the witnesses," and this was his manner of seeing
to them.  He was to procure evidence, the method not being
specified, and he tried to get it by an unlawful method.  The
subject was left to his judgment and he acted according to his
judgment.  The scope of the business intrusted to him
included whatever he thought best to do in order to get the
right kind of witnesses.  He was not working for himself, but
for the defendant, and, as he represented it with reference to
the subject of witnesses, his conduct not only tended to show
that its case was weak, for witnesses are not bribed unless it
is thought necessary, but to cast a doubt upon the testimony of
the other witnesses who were looked up by him and sworn by
the defendant.  It indicated as the result of his investigation
for the defendant that honest witnesses could not be procured
who would swear to a defense.  If he could not make a mere
admission as such, he could do an act which had the effect of
an admission.  His declarations, *dum fervet opus*, were acts.
Those acts, if shown, would have reflected upon the integrity
of the defendant's case as presented in court through the
medium of witnesses, and would have tended to prevent the
verdict which was rendered in its favor.  They would have
afforded " a presumption against the whole of the evidence "
for the defendant, which has served it so well.  It has had the
benefit of what he did with reference to the other witnesses,
unaffected by the cloud which the evidence offered would
have cast upon them.  He was acting in the course of his
employment, for he was employed to procure witnesses.  The

power of the corporation was intrusted to him with reference to that subject, to be used as he saw fit. His acts related solely to that subject and were done by him as its agent, wholly for its benefit.

If this evidence would have been admissible against an individual defendant, who had employed Kaufmann as he was employed, it is admissible against this corporate defendant. If an honest man by mistake employs a dishonest one to look up witnesses for him, and the latter, through excess of zeal, resorts to bribery, although it was never thought of by his employer, it is better for cleanliness and purity in the administration of justice, that the facts should be shown, with the fullest opportunity for explanation, than to exclude all evidence of the evil acts upon the ground that they were not authorized, because authority may properly be inferred from the nature of the employment. In such a case all doubt should be resolved, if possible, in the interest of clean evidence and the exposure of foul practices.

There are but few authorities which bear directly upon this branch of the subject. We have the general rule that a principal is liable to a third person in a civil action for the fraud or other malfeasance of his agent, perpetrated by the latter in the course of his employment, although the act was *ultra vires* and the principal did not authorize, justify or know of it. (*Palmeri* v. *Manhattan Ry. Co.*, 133 N. Y. 261; *Fifth Avenue Bank* v. *Forty-second Street & G. S. F. R. R. Co.*, 137 N. Y. 231; *Jarvis* v. *Manhattan Beach Co.*, 148 N. Y. 652; *New York & New Haven R. R. Co.* v. *Schuyler*, 34 N. Y. 30; *Stewart* v. *B. & C. R. R. Co.*, 90 N. Y. 588.) As was said in an important case in England: "If the agents employed conduct themselves fraudulently, so that if they had been acting for private employers the persons for whom they were acting would have been affected by their fraud, the same principles must prevail where the principal under whom the agent acts is a corporation." (*Ranger* v. *Great Western Ry. Co.*, 5 H. L. Cases, 86, 87.) So this court has declared that " where authority is conferred to act for another without special

limitation, it carries with it by implication authority to do all things necessary to its execution; and when it involves the exercise of the discretion of the servant, or the use of force towards or against another, the use of such discretion or force is a part of the thing authorized, and when exercised becomes as to third persons the discretion and act of the master, and this although the servant departed from the private instructions of the master, provided he was engaged at the time in doing his master's business and was acting within the general scope of his employment.  *  *  *  In most cases where the master has been held liable for the negligent or tortious act of the servant, the servant acted not only without express authority to do the wrong, but in violation of his duty to the master." (*Rounds* v. *D., L. & W. R. R. Co.*, 64 N. Y. 129, 133.)  So far as this rule rests upon estoppel, it does not apply to the question before us, but so far as it rests upon public policy or convenience, it has some bearing, for the interest of the public is promoted by the exposure of corrupt acts intended to turn the course of justice.

The authorities directly in point, so far as they have been called to our attention, with one exception support the theory that the evidence in question should have been received.  In the leading case evidence was admitted to show that a clerk in the employ of the defendant, a railroad corporation, offered money to a witness for the plaintiff to influence his testimony in favor of the company.  It was the duty of the clerk to look up and arrange the evidence in cases where the company had been sued by persons injured, without special directions and with general authority to use his own judgment.  It expressly appeared that he had no authority " to deal with a witness in any way," and that if he had used money to suborn a witness he would have been instantly discharged.  The court, referring to the authority of the clerk, said : " He was empowered generally to perform that duty without special directions.  That part of the business of the company was placed in his charge with general authority to use his judgment in its performance.  His acts, therefore, were the acts

of the company within the scope of his employment. His legal authority, of course, but extended to lawful acts. So it is true of all agencies, as they are not appointed for the purpose of committing wrong or the performance of illegal acts except in rare cases. Few actions would be maintainable if a recovery could be had only in cases where express authority is given, or the agent is required to commit the wrong. \* \* \* In this case the clerk was in the exercise of a corporate power, engaged in the performance of a duty delegated to him by the company, and in the performance of that duty he attempted the use of illegal means for the accomplishment of a legal end and for the benefit of the company. He did not attempt to suborn the witness for the benefit of himself, but for the benefit of the company — not with the consent of his superior, but in the course of the legitimate and authorized business of the company. He was unquestionably employed by the company, was acting for it and did the act to promote its interest. He was engaged in the performance of a duty for the company — he did the act as a part of the duty, although unauthorized. We are, therefore, of the opinion that he performed the illegal and unauthorized act while acting in and as a part of his employment and we must hold the company is responsible for the act. For that reason we hold that the evidence was admissible." (*Chicago City Ry. Co.* v. *McMahon*, 103 Ill. 485.)

In *Snell* v. *Bray* (56 Wis. 156) a man who expected to be sued requested a friend to write to an acquaintance, but did not authorize him to attempt to influence her testimony if she was called as a witness on the other side. The friend wrote to this person warning her not to aid the other party or testify in the action, and it was held that the letter was properly received in evidence, as an admission by conduct, although it was written before the action was commenced.

In *Baltimore & Ohio R. R. Co.* v. *Rambo* (59 Fed. Rep. 75) it was said that "it was competent for the plaintiff to introduce evidence in rebuttal tending to show that the authorized agent of the Baltimore & Ohio Railroad Company had

been engaged in suborning witnesses to testify falsely. Such evidence was relevant on the main issue as tending to show an admission by its conduct that it had a bad case, needing false and perjured evidence to support it."

In *Green* v. *Town of Woodbury* (48 Vt. 5) it was held that evidence was not admissible to show that a constable employed to subpœna witnesses and assist in the defense of a town, had offered inducements to one of the plaintiff's witnesses to keep away from the trial, when it did not appear that any other officer or agent of the town was cognizant of, authorized or approved the act.

The rule laid down by the Supreme Court of Illinois in the case cited is the better calculated to advance justice by keeping its channels pure. It tends to prevent perjury and fraud and to strengthen the confidence of the people in the courts. Upon principle, as well as according to the weight of authority, proof of Kaufmann's attempt to bribe Klein to swear falsely for the defendant should have been received.

The judgment should be reversed and a new trial granted, with costs to abide the event.

Landon, J. (dissenting). When the servant by the act of executing his master's business does wrong to the injury of another, the master is liable, although he had not authorized the wrong. But when such unauthorized wrong of the servant does no injury to any one, the master should not be punished for his servant's sin. That is this case. There is much authority the other way. It rests in great part upon the praiseworthy desire to punish the offender's attempt upon the purity of justice. But this will not justify imputing to the innocent the wrong of the guilty. Some evidence tending to support the inference of permission or acquiescence on the part of the master should be given. I advise affirmance.

Parker, Ch. J., Bartlett and Martin, JJ., concur with Vann, J., for reversal; O'Brien and Haight, JJ., concur with Landon, J., for affirmance.

Judgment reversed, etc.