STEPHEN-LEEDOM CARPET CO., INC., Respondent-Appellant, et al., Plaintiff, v ARKWRIGHT-BOSTON MANUFACTURERS MUTUAL INSURANCE COMPANY, Defendant, and INSURANCE COMPANY OF NORTH AMERICA, Appellant-Respondent.

First Department, May 22, 1984

**APPEARANCES OF COUNSEL**

*Stephen H. Marcus* and *Harold H. Wolgel* of counsel (*Gottesman, Wolgel, Smith & Secunda, P.C.,* attorneys), for appellant-respondent.

*Louis Haimoff* of counsel (*Blum, Haimoff, Gersen, Lipson, Garley & Niedergang,* attorneys), for Stephen-Leedom Carpet Co., Inc., respondent-appellant.

**OPINION OF THE COURT**

BLOOM, J.

Stephen-Leedom Carpet Co., Inc. (plaintiff), brought this action to recover a sum in excess of $4 million on a

comprehensive dishonesty, disappearance and destruction policy issued to it by Insurance Company of North America (INA). The policy covered, among other things, loss of property occasioned by fraudulent or dishonest acts committed by any of plaintiff's employees. Following the initial stages of discovery, INA ascertained that plaintiff had information with respect to some or all of the employees or former employees, who had committed, or participated in the commission of the thefts. Although INA served interrogatories seeking the names of these employees or former employees, the information was not forthcoming.

Thereafter, plaintiff moved to depose four former employees as nonparty witnesses on the ground that they could furnish information with respect to the alleged employee thefts. As a further ground for deposing these nonparty witnesses, it was urged that they were not residents of the State. Among the four former employees of plaintiff to be examined was one "Louis Bruno". Bruno's deposition was taken in New York City at the office of counsel for plaintiff. Among those present were "Bruno", counsel for plaintiff, counsel for INA and plaintiff's president. "Bruno" testified that he was employed at plaintiff's Mascher and Allegheny plant and described in detail the manner in which he and others engaged in a continuous course of stealing the carpeting from the plant. While refusing to name those who participated in the thefts with him, he did indicate that others were involved. After plaintiff had completed its examination of "Bruno", the examination was adjourned to a date to be agreed upon so that counsel for INA might review the record before proceeding with cross-examination.

At some point prior to the date fixed for the commencement of "Bruno's" cross-examination, it was ascertained that although a Louis Bruno had been employed by plaintiff, the person produced for examination was an impostor. Who in fact the witness was is, apparently, unknown. Thereupon, INA moved to dismiss plaintiff's complaint based upon plaintiff's failure to adequately respond to the interrogatories theretofore served upon it; to depose the two attorneys who had represented plaintiff at the examination of "Bruno" before trial; and to strike the deposition

testimony of George E. Fisher, another of plaintiff's former employees. Fisher had been apprehended in the course of a carpet theft. He was thereafter charged with a crime and pleaded guilty. In return for his cooperation, he received a sentence of probation.

In the interim, plaintiff had located the true Louis Bruno. In opposition to INA's motion, it submitted a handwritten statement from the true Bruno in which he stated that he had worked for plaintiff for some 10 or 11 years, the final period at the Mascher and Allegheny plant. He acknowledged that he was aware of the thievery but stated that he took no part therein and left plaintiff's employ only when the Mascher and Allegheny plant was shut down. Plaintiff urged that the statement be accepted as Bruno's deposition with the right of cross-examination reserved to INA.

Special Term granted INA's motion to the extent of dismissing plaintiff's complaint unless it responded fully and completely to both sets of interrogatories propounded by INA within 30 days and, in addition complied with INA's notice for production of documents. It denied plaintiff's request to treat the handwritten statement of the true Bruno as deposition testimony. However, it granted plaintiff permission to seek to depose the true Bruno in the manner authorized by statute. In all other respects the applications were denied.

Both plaintiff and INA have appealed. However, plaintiff has not urged upon us anything to indicate that the refusal by Special Term to accept the unsworn handwritten statement by the real Bruno as his deposition testimony was an abuse of discretion. Hence, we treat plaintiff's cross appeal as abandoned. With regard to the appeal by INA, we are of the opinion that its motion was correctly decided by Special Term. Accordingly, we would affirm its order.

The critical issue to be determined by us is whether Special Term abused its discretion in denying INA's request to depose the two members of the law firm representing plaintiff who conducted the examination before trial of Bruno, the impostor. CPLR 3101 provides, in subdivision (a) thereof that "[t]here shall be full disclosure of all evidence *material and necessary* in the prosecution or

defense of an action, regardless of the burden of proof" (emphasis supplied). While the enactment of the CPLR expanded substantially the scope of discovery (*Allen v Crowell-Collier Pub. Co.*, 21 NY2d 403; *Rios v Donovan*, 21 AD2d 409; Siegel, Practice Commentary, McKinney's Cons Laws of NY, Book 7B, CPLR C3101:4, p 10) nevertheless, the discovery sought must relate to "facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason" (*Allen v Crowell-Collier Pub. Co.*, 21 NY2d 403, 406, *supra*). In short, it must be relevant to the issue or issues in controversy (Siegel, Practice Commentary, McKinney's Cons Laws of NY, Book 7B, CPLR C3101:5, p 11).

The fact that the Bruno produced for the deposition was an impostor is undisputed. To permit the trial of this action to be diverted from the issue of employee thefts to the issue of who was responsible for the production of the false Bruno will, instead of "sharpening the issues" blunt them and add to the "delay and prolixity" which normally inheres in trials. We think it would be best to leave investigation of the responsibility for the hoax to investigative, prosecuting and disciplinary agencies which are best equipped to deal with the matter rather than to permit the trial of a claim of some seriousness to resolve itself into a hunt for a culprit.

We do not dispute the contention of the minority that "[e]vidence tending to show that a party to an action tried to bribe a witness to give false testimony in his favor, although collateral to the issues, is competent as an admission by acts and conduct that his case is weak and his evidence dishonest * * * 'Where it appears that on one side there has been forgery or fraud in some material parts of the evidence, and they are discovered to be the contrivance of a party to the proceeding, it affords a presumption against the whole of the evidence on that side of the question, and has the effect of gaining a more ready admission to the evidence of the other party.' (1 Phillips on Ev. [C. & H. Notes] 627.) It is not conclusive, even when believed by the jury, because a party may think he has a bad case when in fact he has a good one, but it tends to

discredit his witnesses and to cast doubt upon his position. It is for the consideration of the jury, after ample opportunity for explanation and denial, under proper instructions to prevent them from giving undue attention to the collateral matter to the detriment of the main issue" (*Nowack v Metropolitan St. Ry. Co.*, 166 NY 433, 437). In the case at bar, there is no dispute but that the Bruno who was produced for deposition was an impostor. That will, therefore, be admissible at the trial. Plaintiff may make such explanation as it may deem appropriate. However, to permit expansion of the issue by examining plaintiff's counsel would, we think, focus "undue attention on the collateral issue to the detriment of the main issue" with the result that the trial will become a hunt for the instigator of the hoax rather than a determination of the issues presented by the pleadings.

Accordingly, the order of the Supreme Court, New York County (David Edwards, J.), entered January 18, 1983, is affirmed, without costs.

Silverman, J. (dissenting). We would modify the order appealed from so as to permit defendant Insurance Company of North America (INA) to take the depositions of plaintiff Stephen-Leedom Carpet Co., Inc.'s (SLCC) attorneys, with respect to the circumstances of the production and deposition of the alleged impostor Louis Bruno.

This is an action on a fidelity bond issued by defendant INA to plaintiff SLCC to recover for alleged losses due to employee theft.

Another Justice had previously granted plaintiff's motion to permit the examination of four former employees of plaintiff to perpetuate their testimony. On that motion, the employees had not been named. In support of that motion, one of plaintiff's attorneys had stated, "[w]hile of course plaintiff's counsel is in possession of the names and addresses of these persons, plaintiff is unwilling to disclose their names and addresses to the defendants prior to the taking of the depositions sought herein." And in fact, the names of these former employees were not disclosed until the moment they were sworn at their depositions.

One such deposition was of a person purporting to be Louis Bruno, a former employee of plaintiff SLCC. On his

deposition he testified in circumstantial detail with respect to the alleged continuous course of thefts by employees of SLCC. It later appeared that the witness was an impostor, he was not Louis Bruno at all.

Defendant INA now seeks to examine two of plaintiff's attorneys to determine the facts as to how this impostor came to be produced and to testify. Plaintiff SLCC objects that the attorneys did not know that the witness was an impostor, that they have disclosed all the information they have as to the circumstances and the production of this witness (that he was produced and introduced by another dishonest former employee), and that the matter was in fact referred to the District Attorney in December, 1981. We have been given no further information as to what, if any, criminal action has ensued; the memorandum of the conference with the Assistant District Attorney indicates that investigation or action by the District Attorney is quite unlikely; and indeed, four months later in response to an inquiry from defendant INA's counsel, the District Attorney was unable to locate any record of the complaint.

In any event, plaintiff contends that the matter is not relevant to this case.

When it appears likely that someone has attempted to perpetrate a gross fraud upon the court and upon the parties by blatant fabrication of evidence, the court is most reluctant to wash its hands of the matter because the issue may not be material to the underlying issues in the case.

It seems likely that someone was attempting to fabricate evidence; it is not clear who that someone is. If indeed a party to the lawsuit was responsible for the attempted fabrication, that is a matter which may be gone into at the trial, and is in that sense material. "Fabrication or deliberate mutilation of evidence or other fraud on the part of a party is a circumstance that may properly be considered by the jury as indicating a weak cause. Thus, evidence is admissible to show the attempted bribery of a witness. Cruikshank v. Gordon, 118 N. Y. 178, 187, 23 N. E. 457, 459; Nowack v. Met. St. Ry. Co., 166 N. Y. 433, 60 N. E. 32." (Richardson, Evidence [Prince, 10th ed], § 91; see, also, §§ 253, 491.)

We do not for a moment suggest that the attorneys sought to be deposed had any guilty knowledge of the fraud. But the information the attorneys have given was not under oath or subject to exploration of details on cross-examination; and investigation should start somewhere. As the Court of Appeals said in *Nowack v Metropolitan St. Ry. Co.* (166 NY 433, 440): "If an honest man by mistake employs a dishonest one to look up witnesses for him, and the latter, through excess of zeal, resorts to bribery, although it was never thought of by his employer, it is better for cleanliness and purity in the administration of justice, that the facts should be shown, with the fullest opportunity for explanation, than to exclude all evidence of the evil acts upon the ground that they were not authorized, because authority may properly be inferred from the nature of the employment. In such a case all doubt should be resolved, if possible, in the interest of clean evidence and the exposure of foul practices."

We note that the scope of pretrial disclosure is not limited to matter which may be admissible upon the trial, but includes testimony that may lead to discovery of admissible evidence. (*Allen v Crowell-Collier Pub. Co.*, 21 NY2d 403, 406; *Prink v Rockefeller Center*, 48 NY2d 309, 314, n 1.)

Accordingly, we think the attorneys should be required to give their testimony under oath on deposition as to whatever they may know about this fraud, subject to any legitimate attorney-client privilege; and if further depositions of others are necessary to fully ascertain the facts, the parties should, subject to the particular circumstances and considerations of practicality, have the opportunity for such depositions.

Murphy, P. J., and Fein, J., concur with Bloom, J.; Carro and Silverman, JJ., dissent in an opinion by Silverman, J.

Order, Supreme Court, New York County, entered on January 18, 1983, affirmed, without costs and without disbursements.