erence to such custom when nothing appears in the contract to the contrary. McAllister v. Reab, 4 Wend. 485; Esterly v. Cole, 3 N. Y. 502; Walls v. Bailey, 49 N. Y. 464; Newhall v. Appleton, 114 N. Y. 140, 21 N. E. 105; Atkinson v. Truesdell, 127 N. Y. 232, 27 N. E. 844. It will be seen by reference to the cases just cited that such rule relating to usage applies to dealings between parties only when the terms of their contract are such as to permit its application without conflicting with them. When a custom or usage is not consistent with the terms of a contract between parties, the latter necessarily, in legal effect, governs their rights. It is, however, suggested by counsel that, if the terms of credit in the invoices are treated as an essential part of the contract, they could be waived by the plaintiff, and should be treated as waived by force of the usage referred to, and in view of the former dealings between the parties. There is a marked difference between the waiver of strict performance of a condition precedent and the discharge of a person from legal liability which he has assumed by the contract. The cases cited by the learned counsel for the defendant relate to the former, which requires no consideration for its support, as well as those referring to circumstances which may be productive of equitable estoppel. They have no necessary application to the question of releasing a party to a contract from legal obligations which he has assumed by it. A consideration is essential to such a release. Crawford v. Millspaugh, 13 Johns. 87; Jackson v. Stackhouse, 1 Cow. 122. As has been observed, the legal effect of the terms of the contract was such that interest began to accumulate on the expiration of the specified credit; and as the interest accrued it became part of the debt, from which the defendants could not become relieved without payment, or by release having the support of a consideration. Neither is claimed as a defense. On the conceded fact that the terms of credit were expressed on the face of all the invoices of the goods in question, we think the plaintiff was entitled to the verdict which the court was requested, by its counsel, to direct, and that the exception to the denial of such request was well taken.

The judgment and order should therefore be reversed, and a new trial granted; costs to abide the event. All concur.

(21 App. Div. 72.)

NUTTING v. KINGS COUNTY EL. R. CO.

(Supreme Court, Appellate Division, Second Department. October 5, 1897.)

1. APPEAL—REVIEW.

Where a plaintiff, on two successive trials of a case, has secured verdicts, which have been set aside on the ground that they were against the weight of evidence, a verdict in his favor on the third trial, which the trial court has refused to set aside, should not be disturbed on that ground on appeal.

2. ACTS OF AGENT—RATIFICATION.

A defendant cannot voluntarily retain the fruits of an alleged agent's acts, and at the same time escape a resulting obligation, by disclaiming the agent's authority.

**3.** AGENCY—PROOF.

Agency need not be proved by direct evidence, but may be established by circumstances, or by the course of the conduct of the alleged principal's business.

**4.** EVIDENCE—FAILURE OF DEFENDANT TO TESTIFY.

Where the defendant knows the truth, and at the trial omits to speak, every inference warranted by the evidence should be indulged against him.

Appeal from trial term.

Action by Andrew J. Nutting against the Kings County Elevated Railroad Company. From a judgment in favor of plaintiff, entered on a verdict, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Delos McCurdy, for appellant.

Edward M. Grout, for respondent.

CULLEN, J. This action is brought to recover the sum of $9,000 and interest, which the plaintiff claims the defendant promised to pay him under the following circumstances: In 1887, the defendant, having been unsuccessful in its application to a commission appointed by the general term for a determination that its railroad ought to be constructed, renewed its efforts to obtain the necessary consents from the abutting owners on Fulton street, in the city of Brooklyn, and thus complete its franchise. The plaintiff was a property owner on that street. In May, 1887, a person representing himself as the agent of the defendant applied to the plaintiff for his written consent. The plaintiff expressed his willingness to consent, but wished to be paid for it the same as was paid to other property owners. The agent denied that other owners were being paid for their consents, but agreed that, if any such payments were made, the plaintiff should be paid at the same rate as the others. On this agreement, the plaintiff executed and delivered the consent. The plaintiff is unable to identify this agent. Subsequently, plaintiff learned that the company was paying, or agreeing to pay, the other owners 10 per cent. of the assessed value of their respective properties. Thereupon he sought the company, and had a conversation with Wendell Goodwin, its vice president, in the company's office. He repeated to Goodwin his conversation with the agent, the agreement that he should be paid the same rate as other property owners, and his discovery that such owners were being paid. Thereupon Goodwin promised to pay the plaintiff the same as the others. Some time afterwards, he again saw Goodwin on the subject, who referred him to Judge Shea, the general counsel of the company, who, Goodwin said, had the matter in hand, and was the person with whom the plaintiff must then deal. Plaintiff saw Judge Shea, who told him that he understood the matter, and renewed the promise to pay. Shortly after, the plaintiff went to Europe, and, upon his return, he found the defendant's structure erected, or in course of erection, in front of his premises. He then applied to Goodwin for payment. Goodwin's only reply was:

"When we have swept up, if there is anything left, we will do something for you." This the plaintiff regarded as a refusal, and brought an action against the company for an injunction. The defendant about the same time instituted condemnation proceedings against the plaintiff and others. These proceedings were resisted. The defendant succeeded at the special and general terms. Plaintiff appealed to the court of appeals. When the cause was reached for argument on the calendar of that court, Judge Shea sent for plaintiff and his attorney, Judge Gaynor, and requested an adjournment of the case until the argument of the case of the Union Elevated Railroad Company, then pending in the same court, and involving, to some extent, the same questions as those in the defendant's case, but which Judge Shea thought were more favorably presented in the case of the Union Company. The plaintiff refusing, Shea finally agreed that, if the case would be adjourned, the defendant would pay the plaintiff 10 per cent. of the assessed value of his property, in settlement of all the latter's claims. The plaintiff assented to this. Mr. McCurdy, the defendant's attorney, was then called in, so that he might be informed of the agreement. Judge Gaynor attended the court of appeals, and adjourned the argument of the appeal. Subsequently, the two cases were argued about the same time, and in each case the railroad company was successful. In re Kings Co. El. Ry. Co., 112 N. Y. 47, 19 N. E. 654; In re Union El. R. Co. of Brooklyn, 112 N. Y. 61, 19 N. E. 664.

The foregoing statement rests on the testimony of the plaintiff alone, except as to the last interview with Judge Shea, in which the plaintiff is corroborated by the evidence of his counsel, Judge Gaynor. Evidence was also given by property owners of their negotiation with Shea and Goodwin concerning consents, and the payment to them of 10 per cent. of the valuation of their properties.

This is the third time this case has been before the court on appeal. 16 N. Y. Supp. 673; 91 Hun, 251, 36 N. Y. Supp. 142. The two previous verdicts for the plaintiff have been set aside. From the opinions delivered on the previous appeals, it appears that the decisions then made proceeded on two grounds,—that the verdict was against the weight of evidence, and that the evidence was insufficient to support the verdict.

We should not now disturb the verdict on the first ground, for a third jury has decided the question of fact in the plaintiff's favor. Dorwin v. Westbrook, 11 App. Div. 394, 42 N. Y. Supp. 1123. Nor do we think the verdict is against the weight of evidence as presented on this trial, whatever may have been the case on the earlier trials. Assuming that the plaintiff's story that Shea agreed to pay $9,000 for the adjournment, and in release of plaintiff's claims, whether the company obtained a favorable decision or not, was improbable, it was not contradicted, though it was entirely within the power of the defendant to contradict it, if it were false. Mr. McCurdy, who the plaintiff and Judge Gaynor testified was called in to hear a reiteration of the agreement, was the counsel who appeared for the defendant on the last trial. He was not called as a witness to controvert the plaintiff's testimony. It appears that Judge Shea was dead at

the time of the last trial. The counsel for the respondent states that Shea was alive at the time of the first trial, and that then he was not a witness. Of this latter fact we cannot take notice, for it is not in the record. But this much we may assume, either Judge Shea was not a witness on that trial, or his testimony was not favorable to the defendant; for, if he was a witness, his death rendered his former testimony admissible on the last trial. Whether the agreement to pay the plaintiff $9,000 was reasonable or unreasonable, it appears that the defendant made precisely similar agreements with other parties. In the light of these facts, the absence of contradiction, and the fact that the defendant made similar agreements, it is idle to argue that the jury should have discredited the plaintiff. On the contrary, it would have been singular, indeed, if the jury had not believed his story.

There is now to be considered whether the plaintiff's evidence, most favorably construed, established his cause of action. That there was sufficient consideration for the promise to pay, there can be no doubt. There was no proof to show any authority on the part of the agent who first obtained the consent to make the agreement with plaintiff to pay him compensation. But the defendant obtained the consent, and has ever since retained it, producing it upon the trial. Goodwin was informed of the agent's promise, and ratified and renewed it. If the agent exceeded his authority, the defendant should have repudiated his action. It could not retain the fruits of the agent's acts, and at the same time disclaim his authority. It is not claimed that Judge Shea had power to bind the company by his agreement for the adjournment simply by virtue of his position as general counsel. It was therefore necessary for the plaintiff to prove his authority. But it was not necessary to prove it by direct evidence; it could be established by circumstances, or by the course of the conduct of defendant's business. Railroad Co. v. McChesney, 21 Wend. 296; Peterson v. Mayor, 17 N. Y. 449; Olcott v. Railroad Co., 27 N. Y. 546; Beattie v. Railroad Co., 90 N. Y. 643. It appeared from the evidence that, either as counsel, or in addition to his duties as counsel, Judge Shea, either alone, or in connection with Wendell, conducted all the negotiations for the property owners' consents. Wendell sent the plaintiff to Shea as the agent of the company, authorized to act for it in the subject-matter. Other property owners negotiated with Shea and Goodwin, and their agreements were fulfilled by the company. When Shea made his agreement with plaintiff, Judge Gaynor insisted on a like agreement being made with him for other clients for whom he appeared in the same litigation. The company carried out this agreement of Shea as to the parties other than the plaintiff. In our opinion, this evidence was sufficient to warrant the court in submitting the question of the authority of Shea and Goodwin to the jury. It must be remembered that the authority of these persons and their powers were facts peculiarly within the knowledge of the defendant, and therefore slight evidence only on the part of the plaintiff was necessary to call upon the defendant to show the true relation they bore to the company. "The defendants knowing the truth, and omitting to speak, every inference

warranted by the evidence should be indulged against them." Wylde v. Railroad Co., 53 N. Y. 156.

The judgment and order appealed from should be affirmed, with costs. All concur.