William McCoy, an Infant, by James F. McGee, his Guardian ad Litem, Respondent, *v.* George W. Munro, Appellant.

*Motion to set aside a verdict — the appellate court may consider that two verdicts have been rendered for the same party — credibility of witnesses — proper question to ask an impeaching witness — where objectionable evidence is not objected to, the remedy is to direct the jury to disregard it — proof that an attorney dismissed a witness — refusal to strike out testimony which the jury had been directed to disregard — testimony to refresh memory — testimony as to the effect of the normal use of an injured limb.*

The fact that, upon two trials of an action to recover damages for personal injuries, the jury have found in favor of the plaintiff may be considered by the Appellate Division in determining whether or not to set aside the judgment entered upon the second verdict on the ground that it is against the weight of evidence.

The credibility of witnesses who have made written or oral statements out of court which conflict with their testimony is a question for the jury.

The usual and approved course to be followed in the examination of an impeaching witness is to put to him the precise question addressed to the witness sought to be impeached; it is, however, sufficient if the question is so framed as to elicit an answer that is in clear contradiction.

The denial by the court of the defendant's motion to strike out testimony which it had directly charged the jury could not entail any liability upon the defendant does not constitute reversible error.

The refusal of a judge presiding at a jury trial to strike out objectionable evidence admitted without objection does not constitute error, and the remedy of the aggrieved party is to make a request that the jury be instructed to disregard such evidence.

*Semble,* that evidence given upon the second trial of a case by a witness who had been subpœnaed by both parties to attend the first trial, to the effect that after he (the witness) had heard the plaintiff testify to a certain fact on the first trial, the plaintiff's attorney excused him from further attendance at that trial, is incompetent.

Upon the trial the defendant called a witness and asked her if the plaintiff had not told her in a certain conversation at what floor his foot had been caught, to which she replied, "He didn't say anything to me at that conversation as to what floor his foot was caught at." The defendant's counsel then said, "Now, to refresh your memory about that, I will ask you if you did not testify on the last trial that he said his foot was caught between the first and second floors?" The plaintiff objected to the question as improper in form and the objection was sustained.

*Held,* that the testimony was inadmissible for the purpose of impeachment, and that, so far as the question served to refresh the memory of the witness, the ruling was fairly within the discretion of the court.

The plaintiff pleaded permanent injuries and inability to work, and on the trial a physician called by him testified, in effect, that, as a result of the accident, the plaintiff's foot was permanently injured and could not be normally used. He also testified that there was liable to be an open ulcer on the plaintiff's foot "if the boy uses his leg as we ordinarily use ours."

*Held*, that the latter testimony was competent as tending to show that any attempt to make an ordinary use of the plaintiff's foot would be attended with danger, pain and suffering; and that, in the absence of any proof that the defendant had been prejudiced by its admission, such admission would not be treated as error merely upon the assumption that, if the jury had considered it in another aspect, as the basis for additional damages, such consideration would have been erroneous.

APPEAL by the defendant, George W. Munro, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 20th day of June, 1901, upon the verdict of a jury for $6,000, and also from an order entered in said clerk's office of the 26th day of June, 1901, denying the defendant's motion for a new trial made upon the minutes.

This action was brought to recover damages for personal injuries sustained by the plaintiff while riding upon an elevator installed in a building owned by the defendants, in consequence of the alleged negligence of the elevator man. There have been two trials of the action, and the judgment appealed from was rendered on the second trial.

*H. Snowden Marshall* and *Frederick E. Fishel*, for the appellant.

*James C. Cropsey* [*F. W. Catlin* with him on the brief], for the respondent.

JENKS, J.:

We should not disturb this judgment on the ground that it is against the weight of evidence. We may take into consideration that two juries have credited the version of the plaintiff. (*Dorwin* v. *Westbrook*, 11 App. Div. 395; affd., 158 N. Y. 742; *Nutting* v. *Kings County Elevated R. Co.*, 21 App. Div. 72, 75.) Although there was testimony of written statements or oral statements made by the witnesses out of court that conflicted with their testimony, yet the question of their credibility was to be passed upon by the jury. (*Plyer* v. *German Am. Ins. Co.*, 121 N. Y. 689; *Becker* v. *Koch*, 104 id. 394, 404.) We now consider the rulings of the court.

The plaintiff's witness, Tully, on cross-examination testified that he had made an affidavit, which was read in evidence by the defendant. When Tully further testified on cross-examination that he did not understand the affidavit when he made it, he was interrogated upon this subject in detail. Thereafter the defendant called Toch, who testified that he recalled the day when Arons (who procured the affidavit of Tully) came to his place, and that he had thereupon sent for Tully, who was then in the witness' employ. The witness continued : " I remember what I heard of the conversation between Arons and Tully. Q. What did you hear ? [Objected to, as improper form ; objection sustained ; exception.] " I think that the ruling should be sustained. The purpose of the question was to contradict Tully as to matter elicited by the defendant on cross-examination. The usual and approved course in the examination of a contradicting witness is to put the precise question addressed to the principal witness, although it is sufficient if the question is so framed as to elicit an answer that is in clear contradiction. (*Sloan* v. *New York Central R. R. Co.*, 45 N. Y. 125 ; Abbott Civ. Tr. Brief [2d ed.], 192, and authorities cited.) In *Sloan's Case* (*supra*) the court, per CHURCH, Ch. J., say : " It is important that the jury should understand that such evidence is collateral, and not evidence in chief ; and the witness sought thus to be impeached should have an opportunity of making explanation, in order that it may be seen whether there is a serious conflict, or only a misunderstanding or misapprehension ; and for the purpose of eliciting the real truth, the court may vary the strict course of examination."

The defendant called Nellie Tully as a witness. She testified to certain statements made by the plaintiff relative to the accident. The plaintiff then called in rebuttal Julia Tully, the mother of the last witness, who was asked for her version. She testified that her daughter Nellie was in the store at the time, but was not paying any attention. The only question which elicited any material matter was this : " Tell what McCoy (the plaintiff) said about how he got hurt." The question was answered, and then appears on the record : " [Objection renewed and motion to strike out on the same ground denied ; exception.] " But the objection appears as taken after the question was answered, and if the exception was to the denial of the motion to strike out the answer the refusal of the court was not

error, but the remedy of the defendant was a request for an instruction that the jury disregard it. (*Holmes* v. *Moffat*, 120 N. Y. 159, 163; *Smith* v. *Nassau Electric R. R. Co.*, 57 App. Div. 152, 154.) The error suggested is that the witness was testifying to a different conversation than that referred to by her daughter, inasmuch as the witness testified that her daughter, though present, was not paying attention. But it is clear from a reading of the evidence that the witness had in mind the same conversation. All of the incidents of time and place and persons point to the fact that but one conversation was in the mind of both witnesses. Nellie Tully says that it occurred on the night of Good Friday, when her mother and Father Harrington and the two boys were present, and her mother says that she was present on the Friday when the two boys and Father Harrington were present. Father Harrington testified that he was present. That the mother thought that the daughter was not paying attention does not establish the fact that the daughter did not hear that particular conversation, and, therefore, could not testify to it, or that necessarily she must refer to some other conversation.

Roberts, called by the defendant, testified that he did not stop the elevator; that on the former trial he was subpœnaed by both sides, and that he had heard the plaintiff testify on that trial that he (Roberts) had stopped the elevator. He was then asked: "Q. Please state whether or not, after hearing that, you were excused from attending on the trial by the plaintiff's attorney. A. I was. [Objected to as immaterial, irrelevant and incompetent; objection sustained; exception.]" In the first place, the question stands answered. And in the second place, in *Hamel* v. *Brooklyn Heights R. R. Co.* (59 App. Div. 135, 138), upon a ruling of the trial court excluding as incompetent a question put by the defendant to his witness as to what the attorney and counsel for the plaintiff had said to him about forgetting about the accident, where the contention before us was that the evidence was competent against the plaintiff for the reason that it showed an attempt on the part of her attorney to induce a witness to testify falsely, I said: "It is not alleged that there is any evidence to connect the plaintiff with any attempt to induce the witness to testify falsely, or conveniently to forget, or to show that plaintiff had seen the witness at any time, or that plaintiff took part in the

preparation of the case for trial. I think that the agency involved in the relation of attorney and client cannot be applied so as to hold the client responsible for an alleged attempt of the attorney to commit a crime. (Penal Code, §§ 105, 112), independent of all evidence in any way connecting the client with the attempt, so as to permit in the action testimony of the alleged attempt of the attorney, when such testimony is offered only on the principle that it is competent to show such an attempt if it had been made by the plaintiff herself. The authority of the attorney under the retainer is only to do lawful acts. (*Averill* v. *Williams*, 1 Den. 501, 504; *Welsh* v. *Cochran*, 63 N. Y. 181.) And it will be assumed that the common purpose of the client and the attorney was fairly to obtain, properly to prepare and honestly to present her claim before the court. Until some evidence was given, or until it was stated that there was evidence at hand ready to be put in, that the plaintiff was party or privy to a design to commit such crime, then the testimony was neither relevant nor competent upon the question of plaintiff's credibility as a witness." Since the decision in *Hamel's Case* (*supra*) was rendered, the Court of Appeals (by a divided court) has decided *Nowack* v. *Metropolitan St. Ry. Co.* (166 N. Y. 433) and *Lass* v. *Everard's Breweries* (170 id. 444). I do not read these decisions as necessarily overruling the principle of *Hamel's* case. It is decided in *Nowack's* case that "Evidence tending to show that a party to an action tried to bribe a witness to give false testimony in his favor, although collateral to the issues, is competent as an admission by acts and conduct that his case is weak and his evidence dishonest." The court state that Kaufman was employed to look up and "see to" witnesses for the defendant, so as to enable it to defeat plaintiff's case, among others, and he was to find witnesses, if possible, who would swear to such a state of facts as would prevent a recovery against the defendant. The method of doing this was left to his judgment and discretion, and the court held that if he adopted a method not contemplated by the defendant, still it was responsible for what he did in the line of his employment to promote the defendant's interests, and that bribery was *his* method of discharging his employment "to see to" the witnesses. It would seem that there is ground for discrimination between an officer of the court, whose retainer is simply to do lawful acts in the prosecu-

tion.of a suit, and an individual whose letter of marque was to look up and to "see to" witnesses, and that before the client can be held responsible for an act without the scope of honest attorneyship, some evidence tending to establish authority, acquiescence or knowledge of the client as to the unlawful act should be forthcoming. But however this may be, I think that the defendant was not prejudiced in this case by the ruling upon an objection made after the question was answered. All that appears is that a witness employed by the defendant at the time of the accident and subpœnaed by both sides was excused by the plaintiff's attorney during the trial of the case, and that he stated on this trial that before he was excused at the first trial he had heard the plaintiff testify that he (the witness) had stopped the elevator, whereas he testifies on *this* trial that he did not stop the elevator. At best, the argument is but *post hoc propter hoc*, without a single sustaining fact. There is not the slightest proof that the plaintiff's attorney even knew what Roberts would have testified to if he had been called. Assume, however, that Roberts had told him that he did not stop the elevator. He was in the defendant's employ at the time and under his subpœna for the trial. If the plaintiff had told him that Roberts did stop the elevator, is it any evidence of the falsity of the plaintiff's version, or of improper conduct on the part of the attorney towards the suppression or falsification of testimony that he did not retain such a witness under his subpœna? And it may be remarked that the plaintiff on this trial denies that he ever said that Roberts did stop the elevator.

· Mercer, the elevator man, had testified as follows : "He (*i. e.*, the plaintiff) slid off the bags ; as he slipped in going up I reversed the car completely and could not prevent it from getting caught ; while going up in the elevator I kept as much as I could looking at him to see what danger he would get into ; I was apprehensive of the danger all the while ; from the very start I told him to get up ; in the position he was lying I feared that if I started the elevator first he was likely to get hurt." The learned court, DICKEY, J., upon the request of the defendant, charged : " If the jury believe from the evidence that the plaintiff got upon the elevator and lay or sat down before it had started, but was in a dangerous position, and that the elevator man knew that his position was dangerous but started his elevator, and that it was this negligence on the part of the elevator man

which caused the accident, their verdict must be for the defendant."
Thereupon, the learned counsel for the defendant said : " If your
honor charges that request I wish to move to strike out the testi-
mony brought out by the court from the elevator man that with
the full knowledge that the boy was in a dangerous place, he started
up the elevator." It is now contended that the denial of this motion
was error, in that the testimony had become irrelevant and immate-
rial. This may be true ; but I do not think it prejudicial in view of
the specific charge of the learned court requested by the defendant.
All that the court omitted was formally to strike out the testimony
which he had directly charged could not entail any liability upon
the defendant, and which, therefore, the jury were, in effect, directed
to disregard. I do not think that the exception was so well taken
as to require a reversal. (*Smith* v. *Nassau Electric R. R. Co.,* 57
App. Div. 152 ; *Holmes* v. *Moffat,* 120 N. Y. 159.)

The defendant called Nellie Tully, and asked her if the plaintiff
had not told her in a certain conversation at what floor his foot had
been caught, and she replied that " he didn't say anything to me at
that conversation as to what floor his foot was caught at." This
question was then put : " Now, to refresh your memory about that,
I will ask you if you did not testify on the last trial that he said his
foot was caught between the first and second floors ? " The question
was objected to as improper in form, and the objection was sustained.
The learned counsel for the appellant contends that while the exclu-
sion of this question was possibly within the discretion of the court,
it was proper that the court should permit it. The testimony was
inadmissible for the purposes of impeachment. (*Becker* v. *Koch,*
104 N. Y. 394, 401.) Although its admission would not have been
error, yet rejection does not warrant reversal. So far as the ques-
tion served to refresh the memory of the witness, the ruling was
fairly within the discretion of the court.

Dr. Hutton, a physician called by the plaintiff, testified, under
objection and exception, that he could state with reasonable certainty
what the effect of constant irritation would be in the future upon
the scar tissue of this boy's foot, and that as to the future condition
it was " liable to be " an open ulcer on that side of the foot, " if the
boy uses his leg as we ordinarily use ours." The defendant then
moved to strike this out as incompetent and too indefinite under

the rule, and the motion was denied under exception. The learned counsel for the appellant now contends that, inasmuch as the physician had testified that the foot was in a condition of eversion, so that the direct line of pressure, as the boy stood, fell outside of the instep, producing a weak ankle, so that the foot seemed to be permanently weakened, any testimony based upon the ordinary use of the foot was improper, for the jury had the right to assume that the plaintiff, under such conditions, would not use it as ordinary people use their feet ; in other words, the plaintiff could recover damages for the impairment of his foot, and also such damages as would follow the normal use thereof. No such question was submitted to the jury. On the contrary, the court charged them : " As I remember the testimony, it is not only permanent, but progressive as well; that instead of getting better, it will, with reasonable certainty get worse, and you are to consider this matter of permanence in fixing the amount of the damage. If entitled to recover, he is entitled to recover for the impairment of his earning value, and from that point of view, you will regard the fact that he has not been able to work, as he says, if you believe his testimony at all, from the time of the accident to the present time, and that his attempts to work have resulted in failure." I think that inasmuch as the plaintiff had pleaded permanent injury and inability to work, the testimony was competent as indicating whether the plaintiff, as a result of the accident, was permanently injured and incompetent to work, as it tended to show that any attempt to make an ordinary use of the ankle would be attended with danger, pain and suffering. Inasmuch as the testimony was competent on this ground, I do not think its admission was error in the absence of all proof that the defendant was prejudiced, merely upon the assumption that if the jury had considered it in another aspect, as the basis for additional damage, such consideration would have been erroneous.

The judgment and order should be affirmed, with costs.

Judgment and order unanimously affirmed, with costs.