## McCOY v. MUNRO.

(Supreme Court, Appellate Division, Second Department. November 21, 1902.)

1. APPEAL—REVIEW OF EVIDENCE—OPINION OF TWO JURIES.

Where the supreme court is asked to review the question of the sufficiency of the evidence to support a judgment, it may take into consideration the fact that two juries have credited appellee's version of the case.

2. WITNESSES—CREDIBILITY—CONTRADICTORY STATEMENTS.

Though there is evidence of written or oral statements made by witnesses out of court conflicting with their testimony, yet the question of their credibility is for the jury.

3. SAME—IMPEACHING QUESTION—SPECIFIC CHARACTER,

On cross-examination of plaintiff's witness, he testified that he had made an affidavit, but denied that he understood it when made. Defendant then called a witness who testified that he was present when the affidavit was made, and remembered what he heard of the conversation. He was then asked, "What did you hear?" Held, that the question was objectionable as not calculated to elicit a clear contradiction of the first witness' statement.

4. TRIAL—OBJECTION TO QUESTION—TIME OF MAKING.

An objection to a question, taken after it is answered, comes too late.

5. SAME—EXPURGATION OF TESTIMONY—REMEDY.

The remedy of a party who objects after a question is answered and who desires the expurgation of the testimony is by a request for an instruction that the jury disregard it, and not by motion to strike it out.

6. WITNESS—IMPEACHMENT—IDENTITY OF OCCURRENCE—SUFFICIENCY OF EVIDENCE.

Defendant's witness testified to certain statements made by plaintiff. Plaintiff in rebuttal called another witness, who testified that the first was present "but was not paying any attention." The first witness had testified that the conversation occurred on the night of Good Friday, when the second witness and three other persons were present. The second witness testified that she was present on the Friday when the three others were there. Held, that the conversation referred to by both witnesses was sufficiently identified as the same one, the fact that the second thought the first witness was not paying attention not being sufficient to establish the fact that the first witness did not hear that particular conversation.

7. HARMLESS ERROR—CONCEALMENT OF TESTIMONY—EXCLUSION OF SHOWING.

In an action for an injury occasioned by the negligent operation of an elevator, defendant called its employé, who testified that he did not stop the elevator; that on a former trial he was subpœnaed by both sides, and that he had heard the plaintiff testify on that trial that he, the witness, had stopped the elevator. He was then asked whether he was then

excused by plaintiff's attorney, and answered that he was. *Held*, that any error in sustaining an objection to the question was harmless, as plaintiff's failure to call the witness on the former trial was no evidence that plaintiff's statement was untrue.

8. SAME—REFUSAL TO STRIKE TESTIMONY—INSTRUCTION.

In an action for an injury occasioned by the negligent operation of an elevator, the elevator man testified that while going up in the elevator he kept watching plaintiff to see what danger he would get into; that he was apprehensive of danger, and from the very start told plaintiff to change his position; that, in the position plaintiff was lying, he feared that he was likely to get hurt. The court charged that if plaintiff got upon the elevator and lay down in a dangerous position, and the elevator man knew this but started the elevator, and it was this negligence which caused the accident, nevertheless the verdict must be for the defendant. *Held*, that the denial of a motion by defendant to strike out the testimony of the elevator man was not prejudicial.

9. WITNESS—REFRESHING MEMORY—FORMER TESTIMONY—COURT'S DISCRETION.

Defendant's witness was interrogated as to an admission made by plaintiff, and denied that it was made. She was then asked, in order to refresh her memory, whether she did not testify to the admission at a former trial. *Held*, that the exclusion of the question was within the discretion of the court, and not error.

10. DAMAGES—PERSONAL INJURY—DOUBLE RECOVERY.

In a personal injury case, a physician called by plaintiff testified that, if the injured foot was used "as we ordinarily use ours," the irritation would produce an open ulcer. He had previously testified that the foot was permanently weakened. *Held*, that the evidence, being admissible on the question of impairment of earning capacity, was not objectionable as permitting a recovery both for the permanent impairment of the foot and for the consequences of an attempt to use it in ordinary fashion, it not appearing that the jury had in fact so interpreted it.

Appeal from trial term, Kings county.

Action for personal injuries by William McCoy, an infant, by James F. McGee, his guardian ad litem, against George W. Munro. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

H. Snowden Marshall, for appellant.
James C. Cropsey, for respondent.

JENKS, J. We should not disturb this judgment on the ground that it is against the weight of evidence. We may take into consideration that two juries have credited the version of the plaintiff. Dorwin v. Westbrook, 11 App. Div. 395, 42 N. Y. Supp. 1123, affirmed 158 N. Y. 742, 53 N. E. 1124; Nutting v. Railway Co., 21 App. Div. 72, 75, 47 N. Y. Supp. 327. Although there was testimony of written statements or oral statements made by the witnesses out of court that conflicted with their testimony, yet the question of their credibility was to be passed upon by the jury. Plyer v. Insurance Co., 121 N. Y. 689, 24 N. E. 929; Becker v. Koch, 104 N. Y. 394, 404, 10 N. E. 701, 58 Am. Rep. 515. We now consider the rulings of the court.

The plaintiff's witness, Tully, on cross-examination testified that he had made an affidavit, which was read in evidence by the defendant. When Tully further testified on cross-examination that he did

not understand the affidavit when he made it, he was interrogated upon this subject in detail. Thereafter the defendant called Toch, who testified that he recalled the day when Arons (who procured the affidavit of Tully) came to his place, and that he had thereupon sent for Tully, who was then in the witness' employ. The witness continued: "I remember what I heard of the conversation between Arons and Tully. Q. What did you hear? (Objected to, as improper form. Objection sustained. Exception.)" I think that the ruling should be sustained. The purpose of the question was to contradict Tully as to matter elicited by the defendant on cross-examination. The usual and approved course in the examination of a contradicting witness is to put the precise question addressed to the principal witness, although it is sufficient if the question is so framed as to elicit an answer that is in clear contradiction. Sloan v. Railroad Co., 45 N. Y. 125; Abbott's Civil Trial Brief, 192, and authorities cited. In Sloan's Case, supra, the court, per Church, C. J., say:

"It is important that the jury should understand that such evidence is collateral, and not evidence in chief; and the witness sought thus to be impeached should have an opportunity of making explanations, in order that it may be seen whether there is a serious conflict, or only a misunderstanding or misapprehension; and, for the purpose of eliciting the real truth, the court may vary the strict course of examination."

The defendant called Nelly Tully as a witness. She testified to certain statements made by the plaintiff relative to the accident. The plaintiff then called in rebuttal Julia Tully, the mother of the last witness, who was asked for her version. She testified that her daughter, Nelly, was in the store at the time, but was not paying any attention. The only question which elicited any material matter was this: "Tell what McCoy (the plaintiff) said about how he got hurt." The question was answered, and then appears on the record: "Objection renewed, and motion to strike out on the same ground denied. Exception." But the objection appears as taken after the question was answered, and, if the exception was to the denial of the motion to strike out the answer, the refusal of the court was not error, but the remedy of the defendant was a request for an instruction that the jury disregard it. Holmes v. Moffat, 120 N. Y. 159, 163, 24 N. E. 275; Smith v. Railroad Co., 57 App. Div. 152, 154, 67 N. Y. Supp. 1044. The error suggested is that the witness was testifying to a different conversation than that referred to by her daughter, inasmuch as the witness testified that her daughter, though present, was not paying attention. But it is clear from a reading of the evidence that the witness had in mind the same conversation. All of the incidents of time and place and persons point to the fact that but one conversation was in the mind of both witnesses. Nelly Tully says that it occurred on the night of Good Friday, when her mother and Father Harrington and the two boys were present, and her mother says that she was present on the Friday when the two boys and Father Harrington were present. Father Harrington testified that he was present. That the mother thought that the daughter was not paying attention does not establish the fact that the daughter did not hear that particular conversation, and therefore could not testify

to it, or that necessarily she must refer to some other conversation.

Roberts, called by the defendant, testified that he did not stop the elevator, that on the former trial he was subpœnaed by both sides, and that he had heard the plaintiff testify on that trial that he (Roberts) had stopped the elevator. He was then asked: "Q. Please state whether or not, after hearing that, you were excused from attending on the trial by the plaintiff's attorney? A. I was. (Objected to as immaterial, irrelevant, and incompetent. Objection sustained. Exception.)" In the first place, the question stands answered. And in the second place, in Hamel v. Railroad Co., 59 App. Div. 135, 138, 69 N. Y. Supp. 166, upon a ruling of the trial court excluding as incompetent a question put by the defendant to his witness as to what the attorney and counsel for the plaintiff had said to him about forgetting about the accident, where the contention before us was that the evidence was competent against the plaintiff for the reason that it showed an attempt on the part of her attorney to induce a witness to testify falsely, I said:

"It is not alleged that there is any evidence to connect the plaintiff with any attempt to induce the witness to testify falsely, or conveniently to forget, or to show that plaintiff had seen the witness at any time, or that plaintiff took part in the preparation of the case for trial. I think that the agency involved in the relation of attorney and client cannot be applied so as to hold the client responsible for an alleged attempt of the attorney to commit a crime (Pen. Code, §§ 105, 112), independent of all evidence in any way connecting the client with the attempt, so as to permit in the action testimony of the alleged attempt of the attorney when such testimony is offered only on the principle that it is competent to show such an attempt if it had been made by the plaintiff herself. The authority of the attorney under the retainer is only to do lawful acts. Averill v. Williams, 1 Denio, 501, 504; Welsh v. Cochran, 63 N. Y. 181, 20 Am. Rep. 519. And it will be assumed that the common purpose of the client and of the attorney was fairly to obtain, properly to prepare, and honestly to present her claim before the court. Until some evidence was given, or until it was stated that there was evidence at hand ready to be put in, that the plaintiff was party or privy to a design to commit such crime, then the testimony was neither relevant nor competent upon the question of the plaintiff's credibility as a witness."

Since the decision in Hamel's Case, supra, was rendered, the court of appeals (by a divided court) has decided Nowack v. Railway Co., 166 N. Y. 433, 60 N. E. 32, 54 L. R. A. 592, 82 Am. St. Rep. 691, and Lacs v. James Everard's Breweries, 170 N. Y. 444, 63 N. E. 448. I do not read these decisions as necessarily overruling the principle of Hamel's Case. It is decided in Nowack's Case that "evidence tending to show that a party to an action tried to bribe a witness to give false testimony in his favor, although collateral to the issues, is competent as an admission by acts and conduct that his case is weak and his evidence dishonest." The court state that Kaufman was employed to look up and "see to" witnesses for the defendant, so as to enable it to defeat plaintiff's case, among others, and he was to find witnesses, if possible, who would swear to such a state of facts as would prevent a recovery against the defendant. The method of doing this was left to his judgment and discretion, and the court held that if he adopted a method not contemplated by the defendant, still it was responsible for what he did in the line of his employment to promote the defendant's interests; and that bribery was his method

of discharging his employment "to see to" the witnesses. It would seem that there is ground for discrimination between an officer of the court, whose retainer is simply to do lawful acts in the prosecution of a suit, and an individual whose letter of marque was to look up and to "see to" witnesses, and that, before the client can be held responsible for an act without the scope of honest attorneyship, some evidence tending to establish authority, acquiescence, or knowledge of the client as to the unlawful act should be forthcoming. But, however this may be, I think that the defendant was not prejudiced in this case by the ruling upon an objection made after the question was answered. All that appears is that a witness employed by the defendant at the time of the accident and subpœnaed by both sides was excused by the plaintiff's attorney during the trial of the case, and that he stated on this trial that before he was excused at the first trial he had heard the plaintiff testify that he (the witness) had stopped the elevator, whereas he testifies on this trial that he did not stop the elevator. At best, the argument is but post hoc, propter hoc, without a single sustaining fact. There is not the slightest proof that the plaintiff's attorney even knew what Roberts would have testified to if he had been called. Assume, however, that Roberts had told him that he did not stop the elevator. He was in the defendant's employ at the time, and under his subpœna for the trial. If the plaintiff had told him that Roberts did stop the elevator, is it any evidence of the falsity of the plaintiff's version, or of improper conduct on the part of the attorney towards the suppression or falsification of testimony, that he did not retain such a witness under his own subpœna? And it may be remarked that the plaintiff on this trial denies that he ever said that Roberts did stop the elevator. Mercer, the elevator man, had testified as follows:

"He (i. e., the plaintiff) slid off the bags. As he slipped in going up I reversed the car completely, and could not prevent it from getting caught. While going up in the elevator, I kept as much as I could looking at him to see what danger he would get into; I was apprehensive of the danger all the while; from the very start I told him to get up; in the position he was laying I feared that if I started the elevator first he was likely to get hurt."

The learned court, Dickey, J., upon the request of the defendant, charged:

"If the jury believed from the evidence that the plaintiff got upon the elevator and lay or sat down before it started, but was in a dangerous position, and that the elevator man knew that his position was dangerous, but started his elevator, and that it was this negligence on the part of the elevator man which caused the accident, their verdict must be for the defendant."

Thereupon the learned counsel for the defendant said:

"If your honor charges that request, I wish to move to strike out the testimony brought out by the court from the elevator man, that, with the full knowledge that the boy was in a dangerous place, he started up the elevator."

It is now contended that the denial of this motion was error, in that the testimony had become irrelevant and immaterial. This may be true; but I do not think it prejudicial, in view of the specific charge of the learned court requested by the defendant. All that the court omitted was formally to strike out the testimony which he had directly charged could not entail any liability upon the defendant, and

which, therefore, the jury were, in effect, directed to disregard. I do not think that the exception was so well taken as to require a reversal. Smith v. Railroad Co., 57 App. Div. 152, 67 N. Y. Supp. 1044; Holmes v. Moffat, 120 N. Y. 159, 24 N. E. 275.

The defendant called Nellie Tully, and asked her if the plaintiff had not told her at a certain conversation at what floor his foot had been caught, and she replied that "he didn't say anything to me at that conversation as to what floor his foot was caught at." This question was then put: "Now, to refresh your memory about that, I will ask you if you did not testify on the last trial that he said his foot was caught between the first and second floors?" The learned counsel for the appellant contends that, while the exclusion of this question was possibly within the discretion of the court, it was proper that the court should permit it. The testimony was inadmissible for the purposes of impeachment. Becker v. Koch, 104 N. Y. 394, 401, 10 N. E. 701, 58 Am. Rep. 515. Although admission would not have been error, yet rejection does not warrant reversal. So far as the question served to refresh the memory of the witness, the ruling was fairly within the discretion of the court.

Dr. Hutton, a physician called by the plaintiff, testified, under objection and exception, that he could state with reasonable certainty what the effect of constant irritation would be in the future upon the scar tissue of this boy's foot, and that as to the future condition it "was liable to be" an open ulcer on that side of the foot, "if the boy uses his leg as we ordinarily use ours." The defendant then moved to strike this out as incompetent and too indefinite under the rule, and the motion was denied under exception. The learned counsel for the appellant now contends that, inasmuch as the physician had testified that the foot was in a condition of eversion, so that the direct line of pressure as the boy stood fell outside of the instep, producing a weak ankle, so that the foot seemed to be permanently weakened, any testimony based upon the ordinary use of the foot was improper, for the jury had the right to assume that the plaintiff, under such conditions, would use it as ordinary people use their feet; in other words, the plaintiff could recover damages for the impairment of his foot, and also such damages as would follow the normal use thereof. No such question was submitted to the jury. On the contrary, the court charged them:

"As I remember the testimony, it is not only permanent, but progressive as well; that instead of getting better, it will, with reasonable certainty, get worse, and you are to consider this matter of permanence in fixing the amount of the damage. If entitled to recover, he is entitled to recover for the impairment of his earning value, and from that point of view you will regard the fact that he has not been able to work, as he says, if you believe his testimony at all, from the time of the accident to the present time, and that his attempts to work have resulted in failure."

I think that inasmuch as the plaintiff had pleaded permanent injury and inability to work, the testimony was competent as indicating whether the plaintiff, as a result of the accident, was permanently injured and incompetent to work, as it tended to show that any attempt to make an ordinary use of the ankle would be attended with danger, pain, and suffering. Inasmuch as the testimony was compe-

tent on this ground, I do not think its admission was error, in the absence of all proof that the defendant was prejudiced, merely upon the assumption that, if the jury had considered it in another aspect,— as the basis for additional damage,—such consideration would have been erroneous.

The judgment and order should be affirmed, with costs.   All concur.