tion was commenced, and for the reasons above stated I am of opinion that the complaint must be dismissed.

Complaint dismissed, with costs.

(55 Misc. Rep. 60.)

## DAMBMANN v. METROPOLITAN ST. RY. CO.

### (Supreme Court, Trial Term, New York County.   June, 1907.)

1. NEW TRIAL—INSUFFICIENCY OF EVIDENCE.

    A motion for new trial after verdict, because of the insufficiency of the evidence, can only be granted where the weight of the evidence is such that the court can see the verdict must have been the result of passion, prejudice, mistake, ignorance, or corruption.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 37, New Trial, §§ 142, 146.]

2. WITNESSES—CONFIDENTIAL COMMUNICATIONS.

    The patient, when a witness, can no more be compelled to disclose confidential communications than can the physician.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, § 780.]

3. SAME—PHYSICIAN AND PATIENT.

    The relation of physician and patient being established, communications by the patient to the physician will be presumed to be necessary for proper treatment in a professional capacity.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, § 786.]

4. DEPOSITIONS—INADMISSIBLE EVIDENCE.

    Though part of the testimony taken by deposition is inadmissible, the unobjectionable portion is not therefore to be excluded.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 16, Depositions, § 276.]

5. EVIDENCE—TESTIMONY AT FORMER TRIAL—GROUNDS FOR ADMISSION.

    Testimony of a witness on a former trial can be read only to refresh the memory of such witness or to contradict him.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 2406, 2407.]

Action by Emma A. Dambmann against the Metropolitan Street Railway Company.   Verdict for plaintiff.   On motion for a new trial. Denied.

See 97 N. Y. Supp. 91.

Sutro & Wright, for plaintiff.

Henry A. Robinson, for defendant.

GOFF, J.   On the first trial of this case the jury rendered a verdict in favor of the plaintiff for $13,800.   For error in refusing to charge a request the Court of Appeals reversed, and on the second trial a verdict for $10,000 was rendered.   This verdict the defendant moves to set aside on the grounds of being against the weight of evidence, of being excessive, and for prejudicial error on the trial.

In entertaining a motion to set aside a verdict on the ground that it is against the weight of evidence, the court must be guided by the well-known principles which are given in Rumsey's Practice in these words:

"There is a plain distinction between the duty of the court in granting new trials as against evidence where the motion is made after a verdict of a jury

and where the question is raised upon an appeal from a judgment entered upon a decision of a court or the report of a referee. In the first case a new trial can be granted only where the weight of the evidence against the verdict is so great that the court can see that it must have been the result of passion, prejudice, mistake, ignorance, or corruption. In the second case the power is expressly given to the court to examine the case de novo upon the evidence; and it can order a new trial, not only where the decision is contrary, but where there is a preponderance of evidence against it." 2 Rumsey, Prac. 493.

The cases cited by defendant's counsel in support of his statement that "the verdict should therefore be set aside as against the weight of evidence" go so far afield that a discussion of them here is not necessary, especially in view of the fact that:

"Motions to set aside verdicts as contrary to evidence, as well as motions for a new trial upon the ground of newly discovered evidence, are not governed by any well-defined rules, but depend in a great degree upon the peculiar circumstances of each case. They are addressed to the sound discretion of the court, and whether they should be granted or refused involves the inquiry whether substantial justice has been done; the court having in view solely the attainment of that end." Barrett v. Third Ave. R. Co., 45 N. Y. 628, 632.

Were any further consideration necessary to assist the court's decision upon this point, the following rule is established beyond all question:

"Where a verdict has been rendered the same way on two or more successive trials, it is a circumstance of great weight, which the court will consider upon the motion for a new trial upon this ground, and ordinarily that fact will be sufficient to induce the court to deny the motion." 2 Rumsey, Prac. 495; McCoy v. Monroe, 76 App. Div. 435, 78 N. Y. Supp. 849.

In the light of these authorities the court is clearly of the opinion that this branch of the motion falls to the ground.

In the consideration of the second point, that the verdict is grossly excessive, we are again confronted by principles similar to those already examined. The rule which is laid down in the Encyclopedia of Pleading and Practice is supported by all the authorities which the court has examined, and is to the following effect:

"Where the damages are unliquidated, or there is no fixed rule by which the measure of damages can be ascertained, as in torts and personal injury cases, the amount is referred to the discretion of the jury, and the court will not ordinarily interfere. In such case no mere difference of opinion as to the amount of damages will justify an interference by the court, unless the amount is so unreasonable and excessive as to be indicative of passion, prejudice, partiality, or corruption of the jury." 14 Encyc. of Pl. & Pr. 756.

Applying these principles to the case at bar, we shall examine the plaintiff's testimony, to which we are referred by counsel for the defendant in support of his allegation that the plaintiff's income in the year 1900 exceeded $1,600. Plaintiff testified that her earnings from January 4, 1899, to November 24, 1899, the date of the accident, amounted to $2,500, of which $480 represented her income from German lessons and the sale of paints which she manufactured, leaving $2,020 earned by singing and the giving of singing lessons. Plaintiff testifies that at this time she was receiving at the rate of $525 a year

for singing at the Baptist Church at Yonkers, while later she admits it was "at the rate of $30 or $40 a month, $380 altogether." This difference in rate might have some effect in impeaching the witness, but that is a question solely for the jury. As to her earnings after the accident we have these statements: Plaintiff testified that from May, 1900, to January 1, 1901, she earned $91; from May, 1900, to May, 1901, she earned at the Methodist Church, Yonkers, $250; and from November 24, 1899, the time of the accident, to January 8, 1903, the time of the first trial, she earned $1,300; while from the latter date to the time of the present trial she earned $1,700. Upon cross-examination defendant brought out frequent admissions that after May, 1900, plaintiff taught and sang somewhat, for a portion of which she received compensation, a part was given in exchange for other lessons, and part was given free. These statements were chiefly concerned with the years following 1900. The court is unable to find any warrant in the foregoing testimony for the statement that in the year 1900 her earnings exceeded $1,600, especially as the plaintiff repeatedly affirms that she did no work after the accident and before May, 1900. From this testimony, which does not appear to be successfully contradicted by the defendant, the jury might reasonably find past damages to the extent of the verdict, even though the jury accept defendant's contention that the plaintiff is now completely cured.

There remain for consideration only the exceptions taken to the rulings of the court upon the trial. The court is of opinion that defendant was in no way prejudiced by the admission in evidence of a cyst in plaintiff's right groin. No specific damages were asked for it, and it was distinctly connected with the accident by Dr. Johnston. In the second part of this exception counsel for defendant evidently labors under the misapprehension that he was not allowed to show that plaintiff's mother died of tumor. The ruling of the court did not concern the line of proof, but merely the form of the testimony offered to effect that proof.

The question of privileged communication, when applied to the patient as witness, offers more difficulty of solution, due to the lack of explicit authority on the subject. The court is clearly of opinion, however, that the exclusion of plaintiff's testimony on this ground was no error, both in reason and on authority. It will doubtless be conceded that the relations of physician and patient are legally identical with those of attorney and client. It may be so inferred from the provisions of section 836 of the Code of Civil Procedure, which says:

"The last three sections apply to any examination of a person as a witness unless the provisions thereof are expressly waived upon the trial or examination by the person confessing, the patient or the client."

This is the attitude adopted by the court in the case of Westover v. Ætna Life Ins. Co., 99 N. Y. 56, 58, 1 N. E. 104, 105, 52 Am. Rep. 1; and in the case of House v. Lockwood, 17 N. Y. Supp. 817, 820, 63 Hun, 630, it is expressly stated in this connection that "the rule as to attorneys is the same as to physicians." This being the rule, we are at liberty to apply the principle for which authority is found in Wigmore on Evidence (volume 4, § 2324):

"The privilege being for the protection of the client in his subjective freedom of consultation, it would plainly be defeated if the disclosure of the confidences, though not compellable from the attorney, was still obtainable from the client. Accordingly, under the modern theory, it has never been doubted that the client's own testimony is equally privileged."

See, also, 3 Q. B. Div. 356, 15 Q. B. Div. 114, and Struckmeyer v. Lamb, 75 Minn. 366, 77 N. W. 987.

Although the authorities for the view taken in this decision are scattered, yet on principle alone it would seem obvious that, if a client or patient could be compelled to waive the privilege as to the attorney's or physician's testimony by testifying to the same facts himself, the doctrine of privileged communications in these relations would become a mere farce, as the only other ground of refusal, that the testimony would tend to incriminate or degrade, could only be truthfully used in but a small number of cases involving confidential relations. We are thus forced to the decision as to whether the confidential relations under consideration are such as should be fostered or not. If we agree with the vast majority of New York cases that they should, then the only certain means of so doing is to adopt the rule applied by this court in the case at bar. Plaintiff had not waived her privilege, and the court is of the opinion that she was shielded by her privilege in refusing to answer.

It is alleged by counsel for the defense that it was error to exclude this question on the ground of privilege:

"Q. Yes. Now, doctor, when you examined the lady, the plaintiff here, for the first time, did she tell you anything about an accident having happened before the railroad accident in November?"

It does not appear that the defendant could have been prejudiced in any way by the refusal of the plaintiff to give the categorical answer, "yes" or "no." It is evident, however, that defendant's motive in asking that question was to arrive at information which was privileged, provided plaintiff had established the necessary facts to make it such. If, upon the examination of those facts, it appears that plaintiff has sustained the proper burden of proof and had not waived her privilege, the court is of opinion that no error was committed in excluding the question. It may be conceded that plaintiff was bound to establish that the relation of physician and patient existed between herself and Dr. Luckett in regard to the accident which happened at Percypinny prior to the railway accident. That she has done so is admitted by the form of defendant's counsel's question to plaintiff:

"Will you give me the name of the doctor who attended you, other than Dr. Luckett, for your knee?"

The next question to present itself is whether plaintiff must further show that the conversation sought to be excluded as confidential was necessary to enable the doctor to treat her in a professional capacity. The case of Edington v. Mutual Life Ins. Co., 67 N. Y. 185, 194, holds that this is not necessary, "as it must be assumed from the relationship existing that the information would not have been imparted except for the purpose of aiding the physician in prescribing." This is sometimes known as the "first" Edington Case. The second Eding-

ton Case, from which defendant quotes, is that of Edington v. Ætna
Life Ins. Co., 77 N. Y. 564. This case holds the opposite rule, and at
page 570 the court said:

"But even if, in answering the question, he would have to use or disclose
information he acquired while attending him, how can we upon the evidence
say that such information was necessary to enable him to make his prescrip-
tions?"

This case seems to stand alone, however. It was ignored in the
case of Feeney v. Long Island R. R. Co., 116 N. Y. 375, 381, 22
N. E. 402, 5 L. R. A. 544, which cited at some length from the
first Edington Case as well as from the case of Grattan v. Metro-
politan Life Ins. Co., 80 N. Y. 281, 36 Am. Rep. 617. In the Feeney
Case, Vann, J., said:

"The fact that the plaintiff consulted the physician on the occasion to which
the inquiry related, when considered in connection with the nature of the
questions themselves, is sufficient, in the absence of other proof, to bring them
within the prohibition of the statute."

It then cites the case of Renihan v. Dennin, 103 N. Y. 573, 9 N.
E. 320, 57 Am. Rep. 770. There is a similar holding in the case of
Jones v. Brooklyn, B. & W. E. R. R. Co. (City Ct. Brook.) 3 N. Y.
Supp. 253, affirmed without opinion in 121 N. Y. 683, 24 N. E. 1098,
in which the court by Van Wyck, J., said:

"There is no question that the relation of physician and patient existed be-
tween the parties at the time. But defendant's counsel insists that the tes-
timony called for did not affirmatively appear to be information necessary to
enable the physician to act in his professional capacity. To our minds this
is a refinement that would soon wipe out the beneficent influence of the rule
of silence imposed upon a physician in the interest of suffering humanity.
*  *  *  It is unreasonable that the secrets must be first told to enable the
court to determine that they were necessary to the physician's action in his
professional capacity, and therefore were privileged and could not be used in
evidence. This would accomplish as much good as did the locking of the
stable after the horse was stolen."

Although the second Edington Case cited by defendant may not be
overruled, it does not appear to have been followed in any of the later
cases, and cannot govern the present decision. That plaintiff had not
expressly waived the privilege (Code Civ. Proc. § 836) may be seen
from a reading of the stenographer's minutes, pages 339, 343. As for
a previous waiver, counsel for defendant has failed to show that plain-
tiff called Dr. Luckett at the former trial as to the accident which hap-
pened at Percypinny, or that she waived her privilege as to this con-
sultation in any other manner. On the other hand, it is expressly as-
serted by counsel for plaintiff at page 50 of his brief that plaintiff
"did not so question Dr. Luckett."

The objection that it was error to receive the deposition of Dr. Luck-
ett by piecemeal is not well taken. No authority is advanced by de-
fendant for the proposition; whereas, it appears in American and
English Encyclopedia of Law (volume 9, p. 363) as follows:

"The testimony of witnesses by deposition, when offered as a substitute for
their viva voce testimony, is subject to the same general rules of exclusion
for relevancy, immateriality, and incompetency as if it were given in open
court. *  *  *  If part of the testimony is inadmissible, the unobjectionable

portion is not therefore to be excluded. * * * Sometimes the court may, in its discretion, exclude the objectionable part or the whole deposition. * * * But usually the inadmissible portion is detached or erased before the deposition is given to the jury, or it is not given to the jury and only the admissible portion is read to them, or the whole is submitted to them with instructions to disregard the objectionable part."

It will be observed that the matter in question is to a great extent within the discretion of the court, and it is to be assumed that the court will refuse to divide the questions in such a manner as to materially alter any part of deponent's testimony.

The one remaining point concerns the examination of Mr. Hamilton as to his testimony on the former trial. After cross-examination by plaintiff's attorney, in which it was sought to impeach testimony of witness by reference to his testimony on the first trial, defendant then attempted to show all witness had said on former trial by reading from such previous testimony. This was excluded at that time on the ground of form, although the court expressly said:

"After you ask him as to his knowledge, you are at liberty to refer to matters introduced on his previous examination or cross-examination, as the case may be; but there must be some direct question now with respect to his present memory as to those transactions."

The rule which was there followed is stated in the case of Grattan v. Metropolitan Life Ins. Co., 92 N. Y. 274, 287, 44 Am. Rep. 372:

"What the witness testified to on a former trial, he being living and present for examination on the second trial, could only be proved for the purpose of contradicting him or of refreshing his memory."

To this may be added the case in which a counsel is surprised by his own witness (Bullard v. Pearsall, 53 N. Y. 230), which has no application to the present case. This rule is not controverted by the case of Sexton v. Onward Con. Co., 93 App. Div. 144, 87 N. Y. Supp. 550, upon which defendant rests his argument, as is shown by the fact that the Sexton Case expressly bases its decision upon the Grattan Case, cited above, together with one other.

Although this court would have been slow to award the amount of damages found by the jury in this case, and considers that plaintiff has been amply compensated for the injuries she has suffered, yet, in the light of the foregoing authorities, adequate cause for setting aside this verdict has not been established, and the motion is therefore denied, as is also the plaintiff's motion for an extra allowance.