JULIA SZABO, Respondent-Appellant, v SUPER OPERATING CORP. et al., Respondents; HERTZ CORPORATION et al., Appellants-Respondents.

First Department, April 13, 1976

*Bernard S. Meyer* of counsel *(Meyer, English & Cianciulli, P. C.* and *Fogarty, McLaughlin & Semel,* attorneys), for appellants-respondents.

*Morton H. Feder* for respondent-appellant.

*Thomas R. Newman* of counsel *(Joseph R. Apfel* with him on the brief; *Harry Sokel,* attorney), for respondents.

BIRNS, J. Before us is an order, Supreme Court, New York County (MARESCA, J.), entered June 3, 1975, setting aside a verdict in favor of plaintiff against taxi defendants and in favor of truck defendants, as against the weight of the evidence in the interests of justice and ordering a new trial. The truck defendants appeal and the plaintiff cross-appeals.

A taxicab and a truck owned by the respective defendants, were in an accident on Second Avenue and 70th Street on April 20, 1972. Contact occurred between the front of the truck and the rear of the taxi as both were proceeding south; the taxi was propelled onto the sidewalk, striking plaintiff. Her injuries required the amputation of a leg.

The jury returned a verdict in the sum of $800,000 in favor of the plaintiff against the taxi defendants but not against the truck defendants.

Subsequent to the verdict, motions were made by the plaintiff to set aside the verdict insofar as it dismissed her complaint against the truck defendants, and by the taxi defendants to set aside the verdict against them in favor of the plaintiff. The trial court in granting the motions, stated:

"Whatever version of the accident is accepted in whole or in part, or in combination, the conclusion is inescapable that the truck driver failed to maintain that degree of control over his vehicle and that degree of alertness to conditions of traffic surrounding him, which it was his legal obligation to maintain under the conditions prevailing at the time and place of the accident.

"In the course of the trial, testimony was elicited from witnesses for the taxi defendants which, in the opinion of this court, inflamed and outraged the jury so that the verdict was tainted with prejudice against the taxi defendants and resulted in a verdict against the weight of the evidence as between the defendants.

"The Court determines that the proof in the present case, so preponderates in plaintiff's favor on the issue of the truck defendant's liability that the jury could not have arrived at the result reached upon any fair interpretation of the evidence. Accordingly, the verdict in favor of defendant is set aside and a new trial is directed with respect to the truck defendant's liability."

The court below erroneously referred to "testimony * * * elicited from witnesses for the taxi defendants which * * * inflamed and outraged the jury." As will be seen, one of those witnesses was called by the truck defendants.

We are not concerned now with the question whether there was evidence to support the verdicts. We are concerned, however, with the question of whether the evidence adduced at the trial permitted the Trial Judge, in the exercise of his discretion, to rule as he did.

Although the trial court's ruling to some degree particularized the reasons for its conclusion, it appears and was argued before us, that the trial tactics of counsel for the truck defendants created such prejudice against the taxi defendants as to cause the jury to ignore those aspects of the evidence upon which a verdict of liability could be returned against the truck defendants.

Our attention is focused on the testimony of one Osmond Smith, also a taxi driver, and a principal witness to the accident. At the time of trial he resided in Florida, and was produced by the truck defendants. When Smith took the stand, there was a question of fact as to how the accident happened. The taxi driver involved in the accident had testified, in substance, that he was proceeding south on Second Avenue at 20 miles per hour in the second lane and was suddenly struck in the rear by the truck, lost control and mounted the sidewalk. The truck driver had testified, in essence, that the collision occurred when the taxi driver performed a cut-in maneuver from a lane to the left of the truck lane for traffic.

On direct examination, Smith testified that he observed the taxi cut across the front of the truck, causing contact between the two vehicles.

Certainly, Smith's testimony if uncontradicted and accepted by the jury would warrant the jury's verdict absolving the truck defendants from liability in the circumstances. The truck defendants' counsel, however, was not content to allow

the matter to rest there. Instead, as part of his direct examination, he proceeded, in effect, to impeach his own witness, introducing into evidence two written statements signed by Smith containing differing versions of the accident, which contradicted his testimony on the stand.

In the first written statement he said he had in fact not observed the taxi swerve in front of the truck, but that the taxi was in front of the truck and "[f]or some reason, the truck did not slow down and as it came up behind the cab very close, I saw the truck skid into the rear of the cab. The cab was moving at the time but it had slowed down. Then the truck's front hit the rear of the cab with a great crash." In the second statement Smith said he "observed the taxi in front of the truck partially in the first and partially in the second lane from the west, the cab was travelling approx. 25 miles per hour, the truck was speeding trying to pass the cab, it struck the cab in the rear with the right front fender causing the cab to mount the sidewalk."

Perhaps for strategic reasons, opposing counsel did not object to the introduction of said statements.

Counsel for the truck defendants then proceeded to elicit from Smith, in front of the jury, that on one occasion, a representative of the taxi defendants and on another occasion a representative of plaintiff's counsel, had each paid him $200 for the respective written statements in the face of Smith's demand of $1,000 from each of them. The evidence was adduced on the theory that "[a]ny conduct of a party adverse to his position at trial is admissible against him."

It is difficult to conclude that Smith's testimony on these collateral matters in any way related to the claim of the truck defendants that they were not at fault. The introduction of the prior inconsistent statements and the exploration of the circumstances under which they were obtained could not help but prejudice the jury against the taxi defendants. Compounding the prejudice, and still on direct examination, counsel through Smith then informed the jury that the truck defendants had refused to pay Smith for information which he had imparted to them concerning the accident although payment for such information had been requested by Smith.

This case is dissimilar from *Nowack v Metropolitan St. Ry. Co.* (166 NY 433) relied upon by the truck defendants as justification for this testimony. In the case at bar, there was no showing that an attempt was made by a party to "bribe" a

witness to testify falsely. Standing alone, the payment of money in return for a statement from Smith, procured well in advance of the trial, is not evidence of an attempt to bribe the witness.

The receipt of such evidence concerning payments to Smith by plaintiff and the taxi defendants and nonpayment to him by the truck defendants could serve only to accentuate the taxi defendants' culpability and, in contrast, convey the impression that the truck defendants were guiltless in the accident.

It was further brought out on Smith's direct examination that he had furnished the written statements, which he characterized as false, because he understood the insurance of the taxi defendants was insufficient to compensate the plaintiff for her injuries. He thought that by furnishing these statements he would improve the plaintiff's chances for an adequate recovery, particularly against the truck defendants.

Parenthetically, the jury also learned through the truck defendants' counsel's insistent questioning of the taxi defendants' manager, despite objection, that the taxi involved was one of a fleet of 134 cabs, which fleet sustained about 50 accidents a month. It may be that this latter testimony was received' properly as an attack upon the ability of the taxi defendants' manager to recall that the particular cab had been in good mechanical condition on the morning of the accident, but it was equally possible the jury concluded the taxi defendants' assets were vast and that a verdict against the taxi defendants only could be returned in good conscience.

There was no legal basis on which Smith's testimony on the collateral matters, i.e., his requests for payments and his receipts of payments, and the refusal of the truck defendants to pay, could properly be received on his direct examination. The inflammatory nature of this testimony was quite obviously in the mind of the Trial Judge when he concluded, in retrospect, that "the verdict was so tainted with prejudice against the taxi defendants [that it] resulted in a verdict against the weight of the evidence as between the defendants." He, therefore, granted the motions to set aside the verdict, despite the fact that counsel for the taxi defendants and counsel for the plaintiff had failed to protect the record in adequate fashion.

In a contested issue of negligence where there was evidence

to support the conflicting claims, it was observed that "[w]hile this kind of a case is one in which the factual issues of negligence are always within the province of the jury, the judge who presides at the trial exercises a broad discretionary judgment in supervising the work of the jury in a case tried before him, and his decision should be sustained when exercised reasonably." *(Lipshitz v Sloan,* 280 App Div 855.)

CPLR 4404 provides that after the rendition of a verdict, a court, "upon the motion of any party or on its own initiative * * * may set aside a verdict * * * where the verdict is contrary to the weight of the evidence, in the interest of justice". Such action should not be taken merely because the Trial Judge would have acted differently but "only where it seems palpably wrong and it can be plainly seen that the preponderance is so great that the jury could not have reached their conclusion upon any fair interpretation of the evidence." *(Kimberly-Clark Corp. v Power Auth. of State of N. Y.,* 35 AD2d 330, 335; see, also, *Mintz v Festa,* 29 AD2d 689, affd 23 NY2d 750; *Nassau-Suffolk Pet Supply v Ashdown,* 22 AD2d 891.)

A " 'trial judge in the exercise of his discretion should not permit a verdict to stand if it is manifestly a miscarriage of justice' and the jury, in his opinion, has clearly acted mistakenly" (4 Weinstein-Korn-Miller, NY Civ Prac, par 4404.09).

Insofar as the role of this court is concerned, it has been said:

"A court which reviews the weight of evidence as well as the law, as does an Appellate Division, must approach an appeal from a decision by a trial judge setting aside a verdict in the light of the nature of the duty and the subtle and not easily definable measure of responsibility which the judge exercises in decision.

"The duty of the judge to supervise the reasonableness of the verdicts returned to him ought to be viewed liberally on appeal because the independence of mind with which that duty is exercised is ingredient to the sound health of the judicial process." *(Mann v Hunt,* 283 App Div 140, 141.)

We find that the court below acted appropriately in granting plaintiff's motion and the taxi defendants' motion to set aside the verdicts and ordering a new trial.

It may be that the truck defendants have no liability under the "true" facts of this case. But that issue should be deter-

mined at a trial where unrelated, extraneous and gratuitous matter is not permitted to adulterate the fact-finding process.

Because of the view of the case expressed herein, there is no need to consider the assertion of the taxi defendants that the verdict was excessive.

Accordingly, the order appealed from should be affirmed, without costs.

MURPHY, J. (dissenting). Since we all agree that the evidence adduced, if credited by the jury, was sufficient to exonerate the truck driver from liability (Trial Term's opinion to the contrary notwithstanding), the only serious question presented hereon is whether a new trial is mandated because of the receipt in evidence of Smith's prior inconsistent statements and the circumstances surrounding their execution as part of the trucking defendants' direct case. I do not believe that it is.

Even if Smith's prior statements were inadmissible as evidence of an attempted "bribe" (cf. *Nowack v Metropolitan St. Ry. Co.,* 166 NY 433), the record reveals that such statements were not only introduced without objection, but that counsel for the plaintiff and the taxi defendants were as eager, if not more so, than the trucking defendants' attorney to present them to the jurors.

The failure of plaintiff and the taxi defendants to object to the introduction of Smith's prior statements was clearly not an oversight. Without it, the jurors would have been presented only with the contrasting versions of the accident given by the respective drivers, with each one attributing the blame to the other; and Smith's testimony, as the only disinterested eyewitness, supporting the truck driver's rendition. At a retrial a repetition of this testimony can be anticipated. The plaintiff and the taxi defendants will then have to decide whether or not to introduce Smith's prior inconsistent statements. If they do, the new panel of jurors will be presented with the same evidence as their predecessors. Without them, I fail to see how any different result can reasonably be expected. Accordingly, I see no justification for setting aside the verdict on this ground.

The Trial Judge's decision to set aside the verdict appears to have been predicated more on his own disbelief of Smith's testimony than on any prejudice resulting from the introduction of the assertedly inflammatory statements. However, it is

fundamental "that, under our method of procedure, it was the province of the jury, not the court, to say whether his testimony was entitled to belief." *(Williams v Delaware Lackawanna & Western R.R. Co.,* 155 NY 158, 163.) And equally well established is the principle that a defendant's jury verdict may not be upset unless it clearly appears "that the preponderance in favor of the plaintiff is so great that the jury could not have reached the conclusion they did upon any fair interpretation of the evidence." *(Mieuli v New York & Queens County Ry. Co.,* 136 App Div 373, 375.) That is not the situation here.

Finally, and before concluding, I do believe a verdict for plaintiff in this case in excess of $500,000 is excessive.

In light of the foregoing, I vote to reverse the order on appeal and to set aside the verdict and direct a new trial against the taxi defendants only, unless plaintiff stipulates to accept the sum of $500,000, in which event said verdict, as modified, should be reinstated.

LUPIANO, LANE and NUNEZ, JJ., concur with BIRNS, J.; MURPHY, J. P., dissents in an opinion.

Order, Supreme Court, New York County, entered on June 3, 1975, affirmed, without costs and without disbursements.