BONEVILLE TRAPP, Respondent, v AMERICAN TRADING AND
PRODUCTION CORP., Also Known as AMERICAN TRADING
TRANSPORTATION CO., INC., Appellant.

First Department, March 6, 1979

### APPEARANCES OF COUNSEL

*William M. Kimball* of counsel *(John J. Nolan* and *Burlingham Underwood & Lord,* attorneys), for appellant.

*Theodore H. Friedman* of counsel *(Henry Isaacson* and *Arum, Friedman & Katz,* attorneys), for respondent.

### OPINION OF THE COURT

SILVERMAN, J.

Plaintiff, a seaman employed on defendant's ship, brought an action for personal injuries, alleging unseaworthiness and common-law negligence. The action was transferred for trial from the Supreme Court to the Civil Court of the City of New York pursuant to CPLR 325 (subd [d]). After trial, the jury rendered a verdict in plaintiff's favor for $175,000. The Trial Judge set the verdict aside and vacated the judgment on the ground of newly discovered evidence, the newly discovered evidence being the gross perjury of one of plaintiff's expert witnesses. The Appellate Term reversed the order of the Trial Judge setting aside the verdict and reinstated the verdict and the judgment thereon. We reverse the order of Appellate Term and we reinstate the order of the Civil Court setting aside and vacating the verdict and judgment and ordering a new trial.

Plaintiff was a seaman employed in the engine room of defendant's ship which had loaded a cargo of corn grain in Albany, New York, and unloaded it in India. It was plaintiff's contention that he suffered severe pulmonary and respiratory injuries because excessive amounts of corn dust had permeated the engine room and the crew's living quarters during the loading and unloading operations and that such corn dust had been permitted to infiltrate the ventilating and air intake system into the interior of the ship. There was extensive evidence on both liability and damages.

In rebuttal, plaintiff called two expert witnesses, the first of whom, and the one apparently mainly relied upon before the

jury, was Donald M. Fraser. Mr. Fraser testified that the general standard of conduct to prevent excessive accumulation of corn dust had not been adhered to on the ship, and that such accumulation of corn dust as occurred was avoidable. He went into various technical features of the ship relevant to plaintiff's claim and explained how these matters were handled on other ships.

In giving his qualifications, Mr. Fraser lied. He said that he holds a Bachelor of Science degree in mechanical engineering from Brown University; that he holds a Master of Science degree in electrical engineering from the University of California; that he had taken advanced studies at Rensselaer Polytechnic Institute and Old Dominion University; that he had served for 22 years in the United States Navy achieving the rank of captain; that he had commanded destroyers, cruisers and ultimately the aircraft carrier *Saratoga;* that he holds a master's license in the Merchant Marine for unlimited tonnage on all oceans; that he had sailed in the Merchant Marine for about seven years principally as chief officer and master; that he had been a marine surveyor, as vice-president in charge of the Norfolk office of Fraser Marine Surveyors, a company of which he and apparently his brother were part owners.

On the motion for a new trial on the ground of newly discovered evidence, it was conclusively established that these qualifications were wholly false; that he held no degrees, graduate or undergraduate; that he had not completed his freshman year in college; that although he was a "member of the Navy" for 25 years, he served on active duty for only 9 years; that the highest rank he ever held was chief warrant officer; that thus he had never reached the rank of captain or commanded the *Saratoga;* that he holds no licenses in the Merchant Marine, master or even third mate; that he has no connection with his brother's marine surveying firm and has no business connection with his brother, although without authority he apparently uses his brother's name on his letterhead.

Faced with these lies, the Trial Judge set the verdict aside.

The plaintiff contends that the evidence was ample to justify the verdict even without Fraser's testimony; that newly discovered evidence relating only to qualifications and credibility of an expert witness is not sufficient to warrant setting aside a verdict; that Fraser's testimony went only to the

negligence claim leaving the unseaworthiness claim and the amount of damages untainted.

■ It is true that generally newly discovered evidence going only to credibility is not a basis for setting aside a verdict. (Cf. *Mully v Drayn,* 51 AD2d 660.) But as this court has observed: "The court has inherent power, not confined rigidly by well-defined rules, to set aside a verdict or vacate a judgment and order a new trial in the interests of justice * * * This inherent power is now codified 4404 and 5015 Civil Practice Law and Rules." *(McCarthy v Port of N. Y. Auth.,* 21 AD2d 125, 127.)

Falsehoods of such magnitude, boldness and impressiveness cannot be protected by restrictive interpretations of the power of the court. As Chief Judge FULD said in another connection: "It is of no consequence that the falsehood bore upon the witness' credibility rather than directly upon defendant's guilt. A lie is a lie, no matter what its subject". *(People v Savvides,* 1 NY2d 554, 557.)

The Trial Justice granting the motion to set aside the verdict said in part: "[E]ach case seeking a new trial is *sui generis* and in final analysis it is the trial court, presumably the closest impartial observer, which must exercise its discretion and determine whether that elusive concept of substantial justice, fairness, and due process were observed at the trial * * * It remains unchallenged that plaintiff's expert was an impostor. And it is a fact that this information could not have been available to defendant before trial. Indeed it was the lack of preparation on the part of plaintiff in failing to verify Fraser's qualifications which led to this situation. And while the newly discovered evidence is collateral, involving credibility, the testimony of the impostor was substantive and went to the very heart of the strongly contested issue of liability * * * Moreover, the Court could not help but observe that the jury which was extremely serious, most attentive, and alert appeared even more so when Fraser stated that he had been the Captain of the USS SARATOGA one of the most illustrious ships in the United States Navy. Indeed the Court itself was most impressed * * * The Court finds that the newly discovered evidence was unavailable to the defendant before trial, it is material, and it most likely would have changed the outcome of the trial. But most important is the issue of fairness. The defendant simply did not have a fair trial. This opinion is not intended to impugn the integrity of

plaintiff's trial counsel, whose reputation and ability is excellent. And this further illustrates why in this case impostor testimony should not be overlooked as harmless error. For the whole legal system has suffered."

■ The verdict obtained, or possibly obtained, in part by such a gross fraud should not be permitted to stand.

We of course agree with the Trial Judge that nothing herein impugns the integrity of plaintiff's counsel. We also note that this is not a fact witness where the parties cannot choose the witness, but an expert witness, presumably one of many that could have been chosen by plaintiff. As plaintiff made the mistake that the expert witness he produced was an impostor, it is not unfair to require him to retry the case without the impostor's testimony.

For us the decisive consideration is that the Trial Justice, the only Judge present at the trial, thought the perjury so infected the verdict as to require that the verdict be set aside in the interest of justice. In *Micallef v Miehle Co., Div. of Miehle-Goss Dexter* (39 NY2d 376, 381), Judge COOKE said: "CPLR 4404 (subd [a]) authorizes the court, either by motion of any party, or on its own initiative, to order a new trial 'in the interest of justice'. It is predicated on the assumption that the Judge who presides at trial is in the best position to evaluate errors therein (4 Weinstein-Korn-Miller, NY Civ Prac, par 4404.01). The Trial Judge must decide whether substantial justice has been done, whether it is likely that the verdict has been affected * * * and 'must look to his own common sense, experience and sense of fairness rather than to precedents in arriving at a decision' (4 Weinstein-Korn-Miller, NY Civ Prac, par 4404.11). This power conferred upon a court to order a new trial is discretionary in nature".

Our power to review the Trial Justice's discretion must be exercised in the light of the fact that he was there and we were not.

As this court observed in *Szabo v Super Operating Corp.* (51 AD2d 466, 471):

"Insofar as the role of this court is concerned, it has been said:

" 'A court which reviews the weight of evidence as well as the law, as does an Appellate Division, must approach an appeal from a decision by a trial judge setting aside a verdict in the light of the nature of the duty and the subtle and not

easily definable measure of responsibility which the judge exercises in decision.

" 'The duty of the judge to supervise the reasonableness of the verdicts returned to him ought to be viewed liberally on appeal because the independence of mind with which that duty is exercised is ingredient to the sound health of the judicial process.' *(Mann v Hunt,* 283 App Div 140, 141.)"

The Trial Judge denied plaintiff's application to restrict the new trial to the issue of liability only. The Trial Judge believed that the question of damages was interwoven with liability and that it was not possible to speculate as to whether the false testimony influenced the jury's consideration of damages, and for these reasons the Trial Judge ordered a complete retrial in the interest of justice. Again we think we should be guided by the Trial Justice's view.

The order of the Appellate Term, First Department, entered November 24, 1977 reversing the order of the Civil Court, New York County (SHERMAN, J.), entered September 24, 1976, vacating and setting aside the verdict and judgment for plaintiff of March 15, 1976 and March 25, 1976, respectively, and ordering a new trial, should be reversed, on the facts and in the exercise of discretion, and said order of the Civil Court, entered September 24, 1976 (as well as those of September 20, 1976 and October 8, 1976), should be reinstated. Costs in the Appellate Term and this court to defendant should abide the event.

KUPFERMAN, J. P., BIRNS, SANDLER and LANE, JJ., concur.

Order, Appellate Term, entered November 24, 1977, unanimously reversed, on the facts and in the exercise of discretion, and the order of Civil Court, New York County, entered on September 24, 1976 (as well as those of Sept. 20, 1976 and Oct. 8, 1976) reinstated, with costs and disbursements in the Appellate Term and in this court to abide the event.