■ CANDIDA DISLA, Individually and as Administratrix of the Estate of LEONEL DISLA, Deceased, Appellant-Respondent, v CITY OF NEW YORK et al., Respondents-Appellants, et al., Defendants. [37 NYS3d 501]—

Order, Supreme Court, Bronx County (Faviola A. Soto, J.), entered April 2, 2015, which, to the extent appealed from as limited by the briefs, denied defendants' posttrial motion to the extent it sought judgment notwithstanding the verdict and granted the motion to the extent it sought an order setting aside the jury verdict and ordering a new trial on the grounds of newly discovered evidence, and conditionally disqualified plaintiff's counsel, unanimously affirmed, without costs.

In this wrongful death suit against the City of New York and a police officer, defendants maintained that the police officer justifiably shot the decedent when he was attacking other people with a knife. At trial, plaintiff's witness Juan Polanco testified that he had seen the shooting and had never seen the decedent holding the knife that was recovered at the scene. Polanco further testified that his statements to the contrary to the police and the District Attorney were the result of coercion. The jury returned a verdict for plaintiff.

After trial, defendants moved to set aside the verdict and for judgment notwithstanding the verdict or, in the alternative, for a new trial, based on newly discovered evidence casting serious doubt on the veracity of Polanco's testimony. This evidence comprised transcriptions of recorded telephone calls made shortly before the trial, in which Polanco (who was incarcerated on unrelated charges at the time) told friends that he had seen the decedent with a knife in the altercation that led to his death but would be testifying falsely at trial to help the decedent's family. In the course of these conversations, Polanco made statements suggesting that he expected to be compensated for testifying to this effect (such as, "I ain't . . . for free"). Supreme Court correctly determined that the transcriptions of these calls constitute new evidence warranting the setting aside of the jury verdict in plaintiff's favor (*see Prote Contr. Co.*

*v Board of Educ. of City of N.Y.*, 230 AD2d 32, 39 [1st Dept 1997]; *Trapp v American Trading & Prod. Corp.*, 66 AD2d 515, 518 [1st Dept 1979]).

The court also correctly denied defendants' motion insofar as it sought judgment dismissing the complaint notwithstanding the verdict. While plaintiff has disavowed any reliance on Polanco's apparently perjured testimony, the remaining evidence she presented at trial would suffice to provide a rational basis for a verdict in her favor even if Polanco's testimony were entirely discounted (*see Cohen v Hallmark Cards*, 45 NY2d 493, 498-499 [1978]). In particular, another witness, Javier Pablo, testified that, from the window of the ground floor of his apartment, he observed the street melee during which the decedent was shot, had a view of the decedent's hands throughout the incident, and never saw a knife in the decedent's hands. In their appellate briefs, defendants highlight arguable weaknesses in Pablo's testimony, asserting that this witness "had at best an extremely limited and obscured view of events before and after the shooting, watching what happened at an angle through a heavily-barred window, . . . and with a large crowd spilling out on the sidewalk between his window and [the decedent]." These are points to be argued to the jury at the new trial, not grounds for deeming the evidence insufficient to support a verdict for plaintiff as a matter of law.

The cases cited by defendants are distinguishable. For example, in *Barnes v City of New York* (44 AD3d 39, 47-48 [1st Dept 2007], *lv denied* 10 NY3d 711 [2008]), this Court found that, without the excluded evidence, there was no other evidence of the plaintiff's version of the incident, and therefore granted judgment notwithstanding the verdict. However, in the instant case, there was other evidence offered by plaintiff that would support her version of the incident, in particular, the testimony of Pablo. Similarly, in *Annunziata v Colasanti* (126 AD2d 75, 80-81 [1st Dept 1987]), this Court found that the defense was based on perjured and incredible testimony that was to be excluded and, therefore, that the defense did not create an issue of fact. Here, by contrast, even excluding Polanco's testimony, Pablo's testimony created a question of fact that should be submitted to the jury (*see Cohen*, 45 NY2d at 499-500).

We also affirm the court's sua sponte conditional disqualification of the law firm representing plaintiff in this action, Emery Celli Brinckerhoff & Abady LLP (ECB&A). Initially, the disqualification was conditional, not absolute, to become effec-

tive only "[s]hould the said witness [Polanco] be called for trial," as stated in the order appealed from. Thus, any uncertainty as to whether Polanco will testify at the new trial has no bearing on the propriety of the conditional disqualification. The disqualification will go into effect only upon a party's declaring an intention to call Polanco as a witness; if neither side does so, ECB&A may continue to represent plaintiff. Further, disqualification upon the court's own motion is appropriate where the court "find[s] it obvious that . . . [a party's] attorney will become an essential witness" (*Matter of Benincasa v Garrubbo*, 141 AD2d 636, 639 [2d Dept 1988]; *see* Rules of Professional Conduct [22 NYCRR 1200.0] rule 3.7 ["Lawyer as witness"]).[1]

In this case, the court properly determined that ECB&A will become "an essential witness" in the event Polanco is to be called as a witness at the new trial. In view of the aforementioned recorded telephone conversations produced by the correctional authorities, all of Polanco's previous accounts of the events surrounding the shooting, as well as any conversations he had concerning his prospective testimony in this action and the identities of the individuals with whom he had those conversations, will become vitally relevant to this action in the event Polanco is to testify again. Such information apparently can no longer be obtained from Polanco himself, however, since he invoked his Fifth Amendment rights when questioned about these matters at the hearing on defendants' posttrial motion. Hence, should Polanco testify at the new trial, any factual information that he provided to ECB&A when he was interviewed by one of its attorneys is properly discoverable, and potentially usable at trial, under CPLR 3101 (d) (2) (*cf. People v Kozlowski*, 11 NY3d 223, 245 [2008] ["the mere fact that a narrative witness statement is transcribed by an attorney is not sufficient to render the statement 'work product'" subject to absolute privilege under CPLR 3101 (c), rather than trial preparation material subject to a conditional privilege under CPLR 3101 (d) (2)], *cert denied* 556 US 1282 [2009]).[2]

We have considered the parties' remaining arguments for affirmative relief and find them unavailing. Concur—Friedman, J.P., Sweeny, Saxe and Richter, JJ.

1. Notably, plaintiff's counsel, while he did register an exception to the conditional disqualification, did not request an opportunity to file a written opposition before the court made a final decision. Thus, any error by the court in failing to offer plaintiff an opportunity to file such papers is unpreserved.

2. In view of Polanco's aforementioned previous invocation of his Fifth Amendment rights, it seems extremely unlikely that he could be a useful witness to either side at the forthcoming trial.